ANDREW H. BAKER, SBN 104197
BEESON, TAYER & BODINE, APC
483 Ninth Street, 2nd Floor
Oakland, CA  94607
Telephone:   (510) 625-9700
Facsimile:   (510) 625-8275
Email:      abaker@beesontayer.com

Attorneys for Defendant
Teamsters Local 2010

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARA O'CALLAGHAN and JENEE MISRAJE,<br><br>                           Plaintiffs,<br><br>                v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA; TEAMSTERS LOCAL 2010; and XAVIER BECERRA, in his official capacity as Attorney General of California,<br><br>                           Defendants. | Case No. 19-CV-02289 JVS (DFM)<br><br>**TEAMSTERS LOCAL 2010'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF COMPLAINT**<br><br>Hearing Date:     September 9, 2019<br>Hearing Time:    1:30 p.m.<br>Courtroom:        10A<br>Judge:            Hon. James V. Selna<br>Complaint Filed:  March 27, 2019<br>Trial Date:       None set |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ............................................................................................1

STATEMENT OF RELEVANT FACTS ..........................................................2

ARGUMENT....................................................................................................2

I.    The Union Is Not Liable for Retrospective Relief under §1983
      Vis-A-Vis the Collection of Fair Share Fees Because it Acted in Good
      Faith in Collecting Fair-Share Fees. ......................................................3

II.   Controlling Court Precedent Precludes Plaintiffs' Attack on Exclusive
      Representation. .......................................................................................9

      A.    California's Higher Education Employment Relations Act ................10

      B.    *Knight* Establishes the Constitutionality of Exclusive
            Representation-Based Collective Bargaining in Public Employment ....12

      C.    *Janus* Did Not Disturb Settled Precedent that Public Employers
            May Use Exclusive Representative Collective Bargaining..................16

      D.    HEERA Does Not Compel Plaintiff To Speak or To Associate with
            Local 2010 Within the Meaning of the First Amendment ....................17

CONCLUSION ..............................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abood v. Detroit Bd. Of Educ.,*
  431 U.S. 209 (1977) ..................................................................3, 6, 8, 11

*Agostini v. Felton,*
  521 U.S. 203 (1997) .............................................................................. 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................. 2

*Babb v. California Teachers Ass'n,*
  2019 WL 2022222 (C.D. Cal. May 8, 2019).....................................3, 15, 16

*Bain v. CTA,*
  891 F.3d 1206 (9th Cir. 2018) ............................................................. 3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................. 2

*Bierman v. Dayton,*
  900 F.3d 570 (8th Cir. 2018) ...........................................................15, 17

*Board of Regents of Univ. of Wis. Sys. v. Southworth,*
  529 U.S. 217 (2000) .............................................................................. 4

*Carey v. Inslee,*
  364 F.Supp.3d 1220 (W.D. Wash. 2019) ............................................. 3

*Chicago Teachers Union, Local No. 1 v. Hudson,*
  475 U.S. 292 (1986) ............................................................................. 3

*City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations Comm'n,*
  429 U.S. 167 (1976) ............................................................................10

*Clement v. City of Glendale,*
  518 F.3d 1090 (9th Cir. 2008) ............................................................. 5

*Cook v. Brown,* No. 6:18-CV-01085-AA,
  364 F.Supp.3d 1184 (D. Or. 2019)...................................................... 3

*Crockett v. NEA-Alaska,*
  367 F. Supp. 3d 996 (D. Alaska 2019).................................................. 3

*Cumero v. PERB,*
  49 Cal.3d 575 (1989).......................................................................... 6

*D'Agostino v. Baker,*
  812 F.3d 240 (1st Cir. 2016)...........................................................15, 19

*Danielson v. AFSCME Council 28,*
  340 F.Supp.3d 1083 (W.D. Wash. 2018) ..................................................... 3

*Davis v. United States,*
  564 U.S. 229 (2011) .................................................................................... 8

*Edwards v. Marin Park, Inc.,*
  356 F.3d 1058 (9th Cir. 2004) ................................................................... 3

*Ellis v. Railway Clerks,*
  466 U.S. 435 (1984) .................................................................................... 4

*Franklin v. Fox,* No. C 97-2443 CRB,
  2001 WL 114438 (N.D. Cal. Jan. 22, 2001) ........................................... 5, 6

*Friedrichs v. California Teachers Ass'n,*
  *136 S. Ct. 1083 (2016)* .............................................................................. 8

*Friedrichs v. Cal. Teachers Ass'n,*
  2014 WL 10076847 (9th Cir. Nov. 18, 2014) ............................................ 6

*Friedrichs v. Cal. Teachers Ass'n,*
  2013 WL 9825479 (C.D. Cal. Dec. 5, 2013) ............................................. 6

*Glickman v. Wileman Brothers & Elliott, Inc.,*
  521 U.S. 457 (1997) .................................................................................... 4

*Grossman v. Hawaii Government Employees,*
  2019 WL 2195206 (D. Haw. May 21, 2019) ............................................ 15

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) .................................................................................... 4

*Harris v. Quinn,*
  134 S.Ct. 2618 (2014) .............................................................................. 7, 8

*Hicks v. Miranda,*
  422 U.S. 332 (1975) .................................................................................. 13

*Hill v. Serv. Employees Int'l Union,*
  850 F.3d 861 (7th Cir. 2017) .................................................................... 15

*Hoffman v. Inslee,* No. C14-200-MJP,
  2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) ........................................ 7

*Hough v. SEIU Local 521,*
  2019 WL 1785414 (N.D. Cal. Apr. 16, 2019) ........................................... 3

*Janus v. AFSCME, Council* 31,
  138 S. Ct. 2448 (2018) ........................................................................ *passim*

*Jarvis v. Cuomo,*
  660 F. App'x 72 (2d Cir. 2016) .............................................................. 7, 15

*Jarvis v. Cuomo*
  2015 WL 1968224 (N.D.N.Y. April 30. 2015) ................................... 18, 19

*Jordan v. Fox, Rothschild, O'Brien & Frankel,*
   20 F.3d 1250 (3d Cir. 1994) .................................................................... 5

*Keller v. State Bar of Cal.,*
   496 U.S. 1 (1990) ..................................................................................... 4

*Knox v. SEIU Local 1000,*
   567 U.S. 298 (2012) ................................................................................17

*Lathrop v. Donohue,*
   367 U.S. 820 (1961) ................................................................................19

*Lehnert v. Ferris Faculty Assn.,*
   500 U. S. 507 (1991) ...........................................................................3, 11

*Lemon v. Kurtzman,*
   411 U.S. 192 (1973) ..............................................................................7, 8

*Locke v. Karass,*
   555 U. S. 207 (2009) ................................................................................. 3

*Lugar v. Edmondson Oil Co.,*
   457 U.S. 922 (1982) ..............................................................................4, 5

*Mentele v. Inslee,*
   916 F.3d 783 (9th Cir. 2019) ..........................................................15, 16

*Minnesota State Board for Community Colleges v. Knight,*
   465 U.S. 271 (1984) .........................................................................*passim*

*Mooney v. Illinois Educ. Ass'n,*
   2019 WL 1575186 (C.D. Ill. Apr. 11, 2019) .......................................... 3

*Payne v. Tennessee,*
   501 U.S. 808 (1991) ................................................................................. 8

*Pinsky v. Duncan,*
   79 F.3d 306 (2d Cir. 1996) ...................................................................5, 7

*Reisman v. Associated Faculties,*
   2018 WL 6312996 (D. Me. Dec. 3, 2018).........................................15, 18

*Rumsfeld v. FAIR,*
   547 U.S. 47 (2006) ..................................................................................18

*Smith v. Arkansas State Highway Employees,*
   441 U.S. 463 (1979) ................................................................................13

*Thompson v. Marietta Educ. Ass'n,*
   2019 WL 1650113 (S.D. Ohio Jan. 14, 2019)........................................15

*Uradnik v. Inter Faculty Organization,*
   2018 WL 4654751 (D. Minn. Sept. 27, 2018)........................................15

*Vector Research, Inc. v. Howard & Howard Attorneys, P.C.,*
  76 F.3d 692 (6th Cir. 1996) ............................................................. 5

*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008) .......................................................................18

*West Virginia Bd. of Educ. v. Barnette,*
  319 U.S. 624 (1943) .......................................................................17

*Winner v. Rauner,* No. 15 CV 7213,
  2016 WL 7374258 (N.D. Ill. Dec. 20, 2016).................................. 7

*Wyatt v. Cole,*
  504 U.S. 158 (1992) .............................................................4, 5, 6, 7

*Yohn v. California Teachers Ass'n,*
  2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) ............................... 6

**Statutes**
29 U.S.C. §159(a) ...........................................................................11
42 U.S.C. §1983 ....................................................................*passim*
Cal. Gov. Code §3560 *et seq.*..............................................*passim*
Cal. Gov. Code §3567 .....................................................................11
Cal. Gov. Code §3570 .....................................................................10
Cal. Gov. Code §3571(a) .................................................................10
Cal. Gov. Code §3571(c) .................................................................10
Cal. Gov. Code §3571.1(a) ..............................................................10
Cal. Gov. Code §3573 .....................................................................10
Cal. Gov. Code §3576 .....................................................................10
Cal. Gov. Code §3578 ..................................................................9, 11
Cal. Gov. Code §3583.5 .................................................................... 4

**Rules**
Fed. Civ. Proc. R. 12(b)(6).............................................................2, 3

# INTRODUCTION

Plaintiffs bring claims against their employer, the Regents of the University of California (herein "the University"), the Union that represents them in that employment, Teamsters Local 2010 (herein "Local 2010" or "the Union"), and the Attorney General of California.  The Complaint contains seven causes of action. Count I seeks an order enjoining Defendants from continuing to collect Union fees from Defendants after their resignation from membership in Local 2010.  Count II seeks a declaratory order broadly declaring that the act of "deducting Union dues after a government employee has requested they stop is a violation of the First Amendment."  Count III seeks an order declaring certain elements of the California Government Code addressing Union membership and dues violate the First Amendment.  Count IV seeks a retroactive refund to Plaintiffs of all fair share fees and Union dues deducted from their pay since commencement of their employment with the University.  Counts V, VI and VII seek an order enjoining the University from continuing to recognize Local 2010, and Local 2010 from continuing to act, as the exclusive collective bargaining representative of Plaintiffs, and orders declaring unconstitutional the University's recognition of Local 2010 as the exclusive bargaining representative of Plaintiffs and declaring unconstitutional certain provisions of the California Government Code authorizing employee organizations to act as exclusive collective bargaining representatives of public sector bargaining units.

This Motion is brought with regard to the Complaint's claim regarding fair share fees paid by Plaintiff Cara O'Callaghan (herein "O'Callaghan"), and Counts V, VI and VII regarding exclusive recognition.  We show below that the U.S. Supreme Court's decision in *Janus v. AFSCME, Council* 31, 138 S. Ct. 2448 (2018) does not entitle O'Callaghan to a retroactive refund of the agency fees she paid Local 2010 prior to the issuance of the *Janus* decision.  And we show that the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight,* 465 U.S. 271 (1984)

forecloses Plaintiffs' attack on the institution of collective bargaining through an exclusive collective bargaining representative.

## STATEMENT OF RELEVANT FACTS

The following facts relevant to this Motion are alleged in the Complaint and are assumed to be true solely for purposes of this Motion.

Plaintiffs O'Callaghan and Jenee Misraje (herein "Misraje) are employed by the University, O'Callaghan at the University of California Santa Barbara (herein "UCSB") and Misraje at the University of California Los Angeles (herein "UCLA"). (Compl. ¶¶ 7 & 8.)  The University has recognized Local 2010 as the exclusive collective bargaining representative for Plaintiffs.  (*Id*. ¶ 72.)

O'Callaghan was employed at UCSB between 2000 and 2004, and has been employed there since August 2009.  (*Id*. ¶ 14.)  Prior to May 31, 2018, when she became a member of Local 2010 and began paying member dues, O'Callaghan was not a member of the Union and was required to pay an agency, or "fair share," fee to the Union while she was employed at UCSB.  (*Id*. ¶¶ 15,16 & 24.)  (Misraje, by contrast, joined the Union shortly following the commencement of her employment at UCLA in May 2015.  (*Id*. ¶¶ 25 & 26.))

Plaintiffs allege that because the University has recognized Local 2010 as the exclusive collective bargaining representative for Plaintiffs, Plaintiffs are compelled "to petition the government with a certain viewpoint, despite that viewpoint being in opposition to Plaintiffs' own goals and priorities for the Sate of California."  (*Id*. ¶ 74.)

## ARGUMENT

"To survive a motion to dismiss" under Rule 12(b)(6), the allegations of the complaint, "accepted as true," must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

1   A motion to dismiss should be granted without leave to amend pursuant to Rule

2   12(b)(6) "'if it appears beyond doubt that the plaintiff can prove no set of facts in

3   support of his claim which would entitle him to relief, construing the complaint in the

4   light most favorable to the plaintiff.'"  *Bain v. CTA,* 891 F.3d 1206, 1211 (9th Cir.

5   2018) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1061 (9th Cir. 2004)

6   (some internal quotation marks and citations omitted)).

## I.   The Union Is Not Liable for Retrospective Relief under §1983 Vis-À-Vis the Collection of Fair Share Fees Because it Acted in Good Faith in Collecting Fair-Share Fees.

9   Plaintiffs' §1983 claim against Local 2010 for retrospective relief for fair share

10   fees collected from O'Callaghan (Compl. ¶¶ 24 & 65), is barred because the Union

11   acted in good faith reliance on state statute and controlling U.S. Supreme Court

12   precedent in collecting *pre-Janus* fair-share fees from non-members.  *See Danielson v.*

13   *AFSCME Council 28,* 340 F.Supp.3d 1083, 1085-86 (W.D. Wash. 2018) (unions not

14   retrospectively liable under §1983 for collecting *pre-Janus* fair-share fees in

15   accordance with state law); *see also Crockett v. NEA-Alaska,* 367 F. Supp. 3d 996,

16   1003-1007 (D. Alaska 2019) (appeal filed) (same); *Carey v. Inslee,* 364 F.Supp.3d,

17   1220, 1227-1232 (W.D. Wash. 2019) (appeal filed) (same); *Janus v. AFSCME Council*

18   *31,* 2019 WL 1239780, at *1-3 (N.D. Ill. Mar. 18, 2019) (appeal filed) (same); *Cook v.*

19   *Brown,* 364 F. Supp. 3d 1184, 1190-1194 (D. Or. 2019) (appeal filed) (same); *Mooney*

20   *v. Illinois Educ. Ass'n,* 2019 WL 1575186, at *2-11 (C.D. Ill. Apr. 11, 2019) (appeal

21   filed) (same); *Hough v. SEIU Local 521*, 2019 WL 1785414, at *1 (N.D. Cal. Apr. 16,

22   2019) (same); *Babb v. California Teachers Ass'n*, 2019 WL 2022222 (C.D. Cal. May

23   8, 2019) at *5-9 (same).

24   Before *Janus,* the Supreme Court had squarely held, and re-affirmed many

25   times, that requiring public employees to pay fair-share fees as a condition of public

26   employment was constitutional.[1]  It is well-established that when private parties act in

---

[1] *Abood v. Detroit Bd. Of Educ.,* 431 U.S. 209, 232 (1977); *Locke v. Karass,* 555 U. S. 207, 213-14 (2009); *Lehnert v. Ferris Faculty Assn.,* 500 U.S. 507, 519 (1991); *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U. S. 292, 301-02 (1986); *Ellis*

good-faith reliance on presumptively valid state laws, they have a complete defense to §1983 liability. Because the Union received *pre-Janus* fair-share fees in accordance with a California statute (Cal. Gov. Code § 3583.5) (employees required as a condition of continued employment, either to join the recognized employee organization or to pay the organization a fair share service fee) that was constitutional under then-controlling Supreme Court precedent, Local 2010 is not retrospectively liable here.

Section 1983 provides a cause of action for the deprivation of an individual's "rights, privileges, or immunities secured by the Constitution and laws" under color of state law. 42 U.S.C. §1983. In limited circumstances, private parties may be sued under §1983 if they act under color of state law. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982). While public officials exercising discretionary duties who face §1983 claims are entitled to "qualified immunity" from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), the Supreme Court has held that private parties cannot invoke "qualified immunity," *Wyatt v. Cole,* 504 U.S. 158, 168-69 (1992).

But private parties are entitled to a similar defense to monetary liability when they rely on presumptively valid state laws. *Every* member of the *Wyatt* Court concluded that *some* defense to monetary liability, whether qualified immunity or a good faith defense, is available to private defendants. The three dissenting Justices concluded that qualified immunity itself is available to private defendants, while the majority opinion observed that such defendants "could be entitled to an affirmative defense based on good faith." *Id.* at 169. The Court's acknowledgement of the availability of a good faith defense was elaborated in separate opinions joined by a majority of the Court. *See id.* at 169 (Kennedy, J., joined by Scalia, J., concurring); *id.*

---

*v. Railway Clerks,* 466 U.S. 435, 455-57 (1984); *see also Keller v. State Bar of Cal.,* 496 U.S. 1, 9-17 (1990); *Board of Regents of Univ. of Wis. Sys. v. Southworth,* 529 U.S. 217, 230-32 (2000); *Glickman v. Wileman Brothers & Elliot, Inc.,* 521 U.S. 457, 471-73 (1997).

at 175 (Rehnquist, C.J., joined by Souter and Thomas, JJ., dissenting); *see also Lugar,* 457 U.S. at 942 n.23 (acknowledging unfairness of imposing damages liability on private parties who "innocently make use of seemingly valid state laws").

On the basis of these opinions, the Fifth Circuit squarely held on remand "that private defendants sued on the basis of *Lugar* may be held liable for damages under §1983 only if they failed to act in good faith in invoking the unconstitutional state procedures...." *Wyatt v. Cole,* 994 F.2d 1113, 1118 (5th Cir. 1993), *cert. denied,* 510 U.S. 977 (1993).  Since *Wyatt,* this holding has been adopted by every Court of Appeals to address this issue including the Ninth Circuit.  *See Clement v. City of Glendale,* 518 F.3d 1090, 1096-97 (9th Cir. 2008) (recognizing and applying good faith defense); *Pinsky v. Duncan,* 79 F.3d 306, 311-12 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys, P.C.,* 76 F.3d 692, 698-99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1275-78 (3d Cir. 1994); *see also Franklin v. Fox,* No. C 97-2443 CRB, 2001 WL 114438, at *6 (N.D. Cal. Jan. 22, 2001) (noting "universal[]" recognition of good faith defense). In *Clement,* a towing company that obeyed a police order to tow a car that was parked on private property with the property owner's permission was granted judgment in the car owner's §1983 suit, based on the company's adherence to governing law.  *Clement,* 518 F.3d at 1093.  The Ninth Circuit affirmed, reasoning that the company had done "its best to follow the law" and that its actions "appeared to be permissible under both local ordinance and state law."  *Id.* at 1097.

The availability of the good faith defense in §1983 actions recognizes the inequity of holding private parties liable for damages for acting under color of state law when government officials would be immune from liability for the same conduct. *See, e.g., Wyatt,* 504 U.S. at 168 ("[P]rinciples of equality and fairness may suggest ... that private citizens ... should have some protection from liability, as do their government counterparts...."); *Lugar,* 457 U.S. at 942 n.23 (unfairness to private parties of being held liable for "mak[ing] use of seemingly valid state laws" "should be

1   dealt with ... by establishing an affirmative defense" and "[a] similar concern is at least

2   partially responsible for the availability of a good faith defense, or qualified immunity,

3   to state officials").  As Judge Charles Breyer has explained, it would be "manifestly

4   unfair to hold that the state actor – whose participation is required for there to be a

5   section 1983 violation at all – is entitled to qualified immunity, but hold the private

6   actor ... liable for the plaintiff's damages." *Franklin,* 2001 WL 114438, at *5.  As

7   these courts also recognize, the good faith defense is fully consistent with the purpose

8   of §1983 "to deter state actors from using the badge of their authority to deprive

9   individuals of their federally guaranteed rights," *Wyatt,* 504 U.S. at 161, because if a

10   state actor's conduct is consistent with then-binding precedent, the threat of §1983

11   liability "will not deter [that] conduct," *Franklin,* 2001 WL 114438, at *6.

12       Plaintiffs' §1983 claim includes a demand for refund of the fair-share fees

13   collected from O'Callaghan before *Janus* issued, at a time when California statues and

14   controlling U.S. Supreme Court precedent expressly allowed the collection of such

15   fees.  This Court, the Ninth Circuit, and the California Supreme Court had all ruled

16   that California's statutory fair-share fee system was constitutional.  *See Friedrichs v.*

17   *Cal. Teachers Ass 'n,* 2014 WL 10076847 (9th Cir. Nov. 18, 2014), *upheld  by an*

18   *equally divided Court,* 136 S.Ct. 1083 (2016); *Friedrichs v. Cal. Teachers Ass'n,* 2013

19   WL 9825479 (C.D. Cal. Dec. 5, 2013); *Cumero v. PERB,* 49 Cal.3d 575, 581-82

20   (1989).  As another judge of the Central District has recognized, "prior to *Janus,"*

21   unions "were merely following the 40-year-precedent of *Abood"* and its progeny, and

22   the state laws premised on those precedents that were in effect at the time the fair-share

23   fees were collected.  *Yohn v. California Teachers Ass'n,* 2018 WL 5264076, at *4

24   (C.D. Cal. Sept. 28, 2018).

25       The Union was entitled, when entering into contractual agreements with public

26   employers that provided for fair-share fees, to rely upon California state law and U.S.

27   Supreme Court precedent that was then binding on public employers, the Union,

28   Plaintiffs, and every lower court, and that was repeatedly reaffirmed in the decades

after its issuance.  *See* n.1, *supra*.  As the Supreme Court has emphasized, "state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." *Lemon v. Kurtzman,* 411 U.S. 192, 209 (1973); *see also Wyatt,* 504 U.S. at 174 (Kennedy, J., concurring) ("[A] private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law."); *Pinsky,* 79 F.3d at 313 ("[I]t is objectively reasonable to act on the basis of a statute not yet held invalid.").

There is nothing unique about the fair-share fee context of this lawsuit that would prevent application of the good faith defense.  To the contrary, after *Harris v. Quinn,* 134 S.Ct. 2618 (2014), held that states could not require Medicaid-funded homecare providers to pay fair-share fees as a condition of employment, every court to consider whether homecare unions had to return fees collected *pre-Harris* applied the good faith defense to hold that the unions that received those fees prior to *Harris* were not subject to retrospective liability under §1983.  *See Jarvis v. Cuomo,* 660 F. App'x 72, 75-76 (2d Cir. 2016), *cert. denied,* 137 S.Ct. 1204 (2017) (holding that union that had relied on state law in collecting fair-share fees from homecare workers before *Harris* was not liable to pay refunds under §1983); *Winner v. Rauner,* No. 15 CV 7213, 2016 WL 7374258, at *5-6 (N.D. Ill. Dec. 20, 2016) (same); *Hoffman v. Inslee,* No. C14-200-MJP, 2016 WL 6126016, at *4 (W.D. Wash. Oct. 20, 2016) (same).

The good faith defense to liability applies regardless of whether the Union could have "predicted" the result in *Janus* – although they could not.  Courts have applied the good faith defense when private parties relied upon state statutes that had not been invalidated by the courts, even where (unlike here) there was no governing precedent holding the law constitutional, and, indeed, even where the governing case law was not clear and even suggested that the legal authority relied on by the defendants was in jeopardy.  *See, e.g., Wyatt,* 994 F.2d at 1120-21 (good faith defense applied where defendant relied upon Mississippi replevin statute that had not yet been invalidated but

that had been placed in "legal jeopardy" by prior Circuit opinion invalidating similar Georgia statute); *cf. Davis v. United States,* 564 U.S. 229, 241 (2011) (Auto, J.) (declining to apply the exclusionary rule to evidence obtained through a search consistent with then-binding Circuit precedent because police were entitled to rely on that precedent, even though its reasoning had been questioned, and because the Court would not "penalize the officer for the appellate judges' error") (alterations and citation omitted).

The Supreme Court has emphatically rejected the notion that anyone is entitled to, much less *required to,* anticipate the overruling of its precedents, even when those precedents have been criticized in later cases.  Rather, lower courts *must* "follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."  *Agostini v. Felton,* 521 U.S. 203, 237 (1997).  While some Justices recently had expressed "misgivings about *Abood," Janus,* 138 S.Ct. at 2484, the Court had *twice declined* to overrule *Abood* in the four years before the *Janus* decision, so *Abood* unquestionably remained the governing law of the land, *see Harris,* 134 S.Ct. at 2638; *Friedrichs v. California Teachers Ass'n*, 136 S. Ct. 1083 (2016).

Exposing private parties to potentially catastrophic liability for relying on a state law that is indisputably valid under then-binding Supreme Court precedent solely because some Justices have expressed doubt about the precedent's reasoning would be both unworkable and highly corrosive to the rule of law. "[S]tatutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct."  *Lemon,* 411 U.S. at 199.  If the good faith defense depended upon the presence or absence of dicta criticizing a particular prior precedent, however, private parties would no longer be able to rely upon the Court's decisions, and would instead be required to predict the way that the Justices (including sometimes, as in *Janus,* a new Justice who has never before opined on the issue) might vote in a future case, thereby undermining the entire system of precedent that forms the basis of our

1   legal system.  *See, e.g., Payne v. Tennessee,* 501 U.S. 808, 827 (1991) (explaining that

2   this system "promotes the evenhanded, predictable, and consistent development of

3   legal principles, fosters reliance on judicial decisions, and contributes to the actual and

4   perceived integrity of the judicial process").

## II.     Controlling Court Precedent Precludes Plaintiffs' Attack on Exclusive Representation.

7            Counts V, VI and VII of Plaintiffs' Complaint constitute an attack on the

8   University's recognition of Local 2010 as the exclusive collective bargaining

9   representative, per state law, of the bargaining unit in which Plaintiffs are employed.

10  Plaintiffs currently have pending before this Court a motion seeking, *inter alia,*

11  preliminary relief enjoining the Union from continuing to act as Plaintiffs' exclusive

12  bargaining representative, and the Union's opposition to that motion, already on file

13  with this Court, largely repeated below, already explains why Plaintiffs cannot succeed

14  on this claim.

15           California's Higher Education Employment Relations Act ("HEERA") provides

16  for a democratic system of exclusive representative collective bargaining in which the

17  majority of employees in a bargaining unit may, if they choose, select a union

18  representative to negotiate and administer a single collective bargaining agreement to

19  cover the entire unit.  *See* Cal. Gov. Code §3560 *et seq.*  In such systems, the exclusive

20  representative, when acting in that capacity, owes a duty of fair representation to the

21  entire bargaining unit, including to employees who have chosen not to join the union.

22  *See, e.g.,* Cal. Gov. Code §3578 (recognized employee organization has obligation to

23  represent all employees in bargaining unit).  The same democratic system of collective

24  bargaining has been used in the United States for decades for public and private sector

25  employees, including federal employees.  *See Janus v. AFSCME Council* 31, 138 S.Ct.

26  2448, 2466 (2018).

27           Plaintiffs allege that the University's recognition of Local 2010 as their

28  bargaining unit's HEERA exclusive representative violates their First Amendment

---

rights, and here seek an injunction enjoining the Union's continued representation of that unit. That legal claim is foreclosed by *Minnesota State Board for Community Colleges v. Knight,* 465 U.S. 271 (1984). The Supreme Court held in *Knight* that an indistinguishable system of exclusive representation "in no way restrained [non-union members'] freedom to speak ... or their freedom to associate or not to associate with whom they please, including the exclusive representative." *Id.* at 288; *see also id.* at 291 (plaintiffs in *Knight* were "[u]nable to demonstrate an infringement of any First Amendment right"). Accordingly, Plaintiffs' motion for injunctive relief on this claim should be denied.

A.   California's Higher Education Employment Relations Act

HEERA permits University of California and California State University employees, if they so choose, to designate an "exclusive representative" by submitting proof of majority support or by voting in a secret ballot election, and HEERA also provides a process for employees to decertify a representative that no longer enjoys majority support. Cal. Gov. Code §§3573, 3576. If the employees choose a representative, the public employer must "engage in meeting and conferring with the employee organization selected as exclusive representative … on all matters within the scope of representation." *Id.* §§3570, 3571(c).

HEERA does not require, and has never required, unit employees to become members of the organization that serves as the unit's exclusive representative, or prohibit them from joining other labor organizations. To the contrary, HEERA makes it unlawful for employers or exclusive representatives to interfere with the rights of employees to form, join, and participate in the activities of employee organizations of their own choosing. *Id.* §§3571(a), 3571.1(a). The designation of an HEERA exclusive representative also does not preclude unit employees from speaking and

petitioning about issues regarding the public universities and colleges, just like all other citizens, whether individually or through organizations of their own choosing.[2]

HEERA prohibits the exclusive representative, when acting in that capacity, from discriminating against employees who choose not to become union members by requiring such representatives to "represent all employees in the unit, fairly and impartially." *Id.* §3578.  HEERA further provides that individual public employees may at any time "present grievances to [their] employer, and have those grievances adjusted, without the intervention of the exclusive representative[.]" *Id.* §3567. After the Supreme Court's decision in *Janus,* public employees represented by labor unions who choose not to be members of those unions are no longer required to provide any financial support to cover the costs of union representation.  138 S.Ct. at 2486.[3]  Although non-members no longer can be required to pay "fair share fees" to the exclusive representative, the exclusive representative still represents the non-member minority and must represent non-members fairly.

The democratic, exclusive representation model of collective bargaining established by HEERA is the same model used for collective bargaining for public employees of the federal government and about 40 other States, the District of Columbia, and Puerto Rico, *see, e.g., Janus,* 138 S.Ct. at 2466; and for private-sector employees covered by the federal National Labor Relations Act and the Railway Labor Act, *see, e.g.,* 29 U.S.C. §159(a).  Exclusive representation is the very essence of labor

---

[2] *See City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations Comm'n,* 429 U.S. 167, 173-76 & n.10 (1976) (bargaining unit members have the same First Amendment rights as other citizens to speak in opposition to union); *Abood v. Detroit Bd. Of Educ.,* 431 U.S. 209, 230 (1977) ("The principle of exclusivity cannot constitutionally be used to muzzle a public employee who, like any other citizen, might wish to express [her] view about governmental decisions concerning labor relations."); *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 521 (1991).

[3] S*ee* "California Attorney General Xavier Becerra Advisory: Affirming Labor Rights and Obligations in Public Workplaces," https://oag.ca.gov/system/files/attachments/press_releases/AG%20Becerra%20Labor%20Rights%20Advisory%20FINAL.pdf (California Attorney General's advisory that "a California public-sector employer may no longer automatically deduct a mandatory agency fee from the salary or wages of a non-member public employee who does not affirmatively choose to financially support the union").

relations and the collective bargaining framework in this country, and it has been so since passage of the Wagner Act in 1935.

B.     *Knight* Establishes the Constitutionality of Exclusive Representation-Based Collective Bargaining in Public Employment

Plaintiffs allege in Count V of their Complaint that Local 2010's designation as the exclusive representative of their bargaining unit "compels Plaintiffs to associate with the Union and, through its representation of them, it compels them to petition the government with a certain viewpoint, despite that viewpoint being in opposition to Plaintiffs' own goals and priorities for the State of California."  (Compl. ¶74.)

But HEERA does not impose any personal obligation on Plaintiffs.  They need not join Local 2010 or endorse its positions and, after *Janus,* they need not even provide any financial support to Local 2010.  Nor are they precluded from speaking and petitioning about any issues, whether individually or through organizations of their own choosing.  Plaintiffs' theory that exclusive representation collective bargaining, by itself, violates the First Amendment rights of bargaining unit workers is foreclosed by the Supreme Court's decision in *Minnesota State Bd. for Cmty. Colleges v. Knight,* 465 U.S. 27 (1984) ("*Knight*"), as every court to consider the issue has recognized.

In *Knight,* a group of Minnesota college instructors argued – like Plaintiffs here – that the exclusive representation provisions of that state's public employee labor relations act violated the First Amendment speech and associational rights of employees who did not wish to associate with the union that a majority had chosen as their bargaining unit's exclusive representative.  465 U.S. at 273, 278-79.  The state law granted their bargaining unit's elected representative the exclusive right to "meet and negotiate" over employment terms.  *Id.* at 274.  The state law also granted the unit's representative the exclusive right to "meet and confer" with campus administrators about employment-related policy matters outside the scope of mandatory negotiations.  *Id.* at 274-75.  Only the designated representative had the right to participate in the "meet and negotiate" and "meet and confer" processes, and the designated representative's views were treated as the faculty's "official collective position."  *Id.* at 273, 276.

The district court rejected the *Knight* plaintiffs' constitutional challenge with respect to the meet-and-negotiate process. *See id.* at 278. On appeal, the Supreme Court summarily affirmed the lower court's rejection of the *Knight* plaintiffs' "attack on the constitutionality of exclusive representation in bargaining over terms and conditions of employment." *Id.* at 278-79; *Knight v. Minnesota Cmty. Coll. Faculty Ass'n,* 460 U.S. 1048 (1983).[4] The district court also concluded that the meet-and-confer process violated the rights of faculty members who had not joined the union that served as their exclusive representative. In a separate, full opinion, the Supreme Court reversed the district court's judgment with respect to the meet-and-confer process, holding that even with respect to matters not involving terms and conditions of employment subject to bargaining, exclusive representation does not infringe the First Amendment speech or associational rights of non-member employees. *Knight,* 465 U.S. at 278, 288.

The *Knight* Court began its analysis by recognizing that government officials have no obligation to negotiate or confer with faculty members, and that the meet-and-confer process (like the meet-and-negotiate process) was not a "forum" to which plaintiffs had any First Amendment right of access. *Id.* at 280-82. The Court explained that non-members also had no constitutional right "as members of the public, as government employees, or as instructors in an institution of higher education" to "force the government to listen to their views." *Id.* at 283. The government, therefore, was "free to consult or not to consult whomever it pleases." *Id.* at 285; *see also Smith v. Arkansas State Highway Employees,* 441 U.S. 463, 464-66 (1979) (government did not violate speech or associational rights of union supporters by accepting grievances filed by individual employees while refusing to recognize union's grievances).

---

[4] The *Knight* summary affirmance remains binding precedent. *Hicks v. Miranda,* 422 U.S. 332, 344-45 (1975).

The *Knight* Court then went on to consider whether Minnesota's public employee labor relations act violated those First Amendment rights that non-members *could* properly assert – namely, the right to speak and the right to "associate or not to associate." 465 U.S. at 288. The Court concluded that Minnesota's law *"in no way* restrained appellees' freedom to speak on any education-related issue *or their freedom to associate or not to associate* with whom they please, including the exclusive representative." *Id.* (emphasis added).

Non-members' speech rights were not infringed by Minnesota's system of exclusive representation because, while the exclusive representative's status "amplifie[d] its voice in the policymaking process," that amplification did not "impact individual instructors' constitutional freedom to speak." As the Court explained, such amplification is "inherent in government's freedom to choose its advisers" and "[a] person's right to speak is not infringed when government simply ignores that person while listening to others." *Id.*

The Supreme Court found no infringement of non-members' associational rights because they were "free to form whatever advocacy groups they like" and were "not required to become members" of the organization acting as the exclusive representative. 465 U.S. at 289. The Court acknowledged that non-members may "feel some pressure to join the exclusive representative" to serve on its committees and influence its positions. *Id.* at 289-90. But the Court held that this "is no different from the pressure to join a majority party that persons in the minority always feel." *Id.* at 290. Such pressure "is inherent in our system of government; it does not create an unconstitutional inhibition on associational freedom." *Id.*

*Knight* thus squarely considered whether exclusive representation violates the speech or associational rights of individuals who are not members of the union that has been designated as their exclusive representative, and held that it does not do so – thereby foreclosing the contrary claim Plaintiffs assert in Counts V, VI and VII of their Complaint. *See id.* at 288 ("[T]he First Amendment guarantees the right both to speak

and to associate.  *Appellees' speech and associational rights, however, have not been infringed ....")* (emphasis added); *id.* at 290 n.12 (non-members' "speech and associational freedom have been wholly unimpaired").

The Ninth Circuit recently agreed that *Knight* forecloses the claim that exclusive representative collective bargaining, by itself, violations the First Amendment.  *See Mentele v. Inslee,* 916 F.3d 783, 2019 WL 924915, at *4-5 (9th Cir. 2019).  Not only is *Mentele* binding precedent, but every court to consider the issue has concluded that *Knight* forecloses any claim that a democratic system of exclusive representative collective bargaining violates the First Amendment.  *See Bierman v. Dayton,* 900 F.3d 570 (8th Cir. 2018) *cert. denied*, 2019 WL 2078110 (May 13, 2019); *Hill v. Serv. Employees Int'l Union,* 850 F.3d 861 (7th Cir. 2017), *cert. denied,* 138 S.Ct. 446 (2017); *Jarvis v. Cuomo,* 660 F. App'x 72 (2d Cir. 2016), *cert. denied,* 137 S.Ct. 1204 (2017); *D'Agostino v. Baker,* 812 F.3d 240 (1st Cir. 2016), *cert. denied,* 136 S.Ct. 2473 (2016); *Reisman v. Associated Faculties,* 2018 WL 6312996 (D. Me. Dec. 3, 2018) (appeal filed); *Uradnik v. Inter Faculty Organization,* 2018 WL 4654751 (D. Minn. Sept. 27, 2018), *aff'd,* No. 18-3086 (8th Cir. Dec. 3, 2018) *cert. denied* 2019 WL 1886119 (Apr. 29, 2019); *Thompson v. Marietta Educ. Ass'n,* 2019 WL 1650113 (S.D. Ohio Jan. 14, 2019); *Babb v. California Teachers Ass'n*, 2019 WL 2022222, at *18 (C.D. Cal. May 8, 2019); *Grossman v. Hawaii Government Employees*, 2019 WL 2195206, at *2-3 (D. Haw. May 21, 2019).

Because neither membership nor financial support were required, the Supreme Court held that the plaintiffs in *Knight* retained the "freedom ... not to associate with whom they please, *including the exclusive representative." Id.* at 288 (emphasis added).  In *Mentele v. Inslee,* the Ninth Circuit adopted this interpretation of *Knight* as binding Circuit precedent.  *Mentele* considered a claim that Washington's system of exclusive representation in collective bargaining for publicly subsidized child care workers violated the associational rights of individuals who have not joined the union designated as exclusive representative.  *Mentele,* 916 F.3d 783, 2019 WL 924815, at

*1.  Affirming the district court's holding that the system did not violate non-members' associational rights, *Mentele* explained that *Knight* "expressly concluded" that the exclusive representation system did not violate non-members' freedom to decline "'to associate with whom they please, including the exclusive representative,'" and "approved the requirement that bound non-union dissenters to exclusive union representation." *Id.* at *5 (quoting *Knight,* 465 U.S. at 288 (emphasis omitted)).

That the employees involved in *Mentele* were "partial state employees" rather than "full-fledged" public employees like Plaintiffs does not serve to remove the court's holding from application here.  *Mentele's* analysis of the impact of exclusive representation on non-members' associational rights contains no such limitation.  To the contrary, *Mentele* based its holding entirely on *Knight's* analysis of that question, and *Knight* involved exclusive representation for "full-fledged public employees" (specifically, community college faculty instructors), not "partial" public employees. 465 U.S. at 278.  While *Mentele* went on to consider the "partial" state employment status of the plaintiffs therein in holding that Washington's system would satisfy heightened constitutional scrutiny if such scrutiny applied (which it did not), *see* 916 F.3d 783, 2019 WL 924815, at *6-7; the distinction between partial and full public employment was irrelevant to *Mentele's* holding that exclusive representation does not impinge upon non-members' associational rights.  *See Babb v. California Teachers, supra* at *18.

Accordingly, under binding Supreme Court and Ninth Circuit precedent, Plaintiffs' compelled association claim fails as a matter of law.

C.    *Janus* Did Not Disturb Settled Precedent that Public Employers May Use Exclusive Representative Collective Bargaining

Plaintiffs rely on the Supreme Court's recent decision in *Janus.*  (Compl. ¶¶ 67, 70 & 71.)  But *Janus* held only that public employees who are not union members cannot be required *to pay "fair share" or "agency" fees* to an exclusive representative for collective bargaining representation.  *Janus* did not hold that exclusive

representation itself violates the First Amendment. 138 S.Ct. at 2460.[5]  As the Eighth Circuit recently explained, *Janus* "never mentioned *Knight,* and the constitutionality of exclusive representation standing alone was not at issue."  *Bierman,* 900 F.3d at 574.

The majority opinion in *Janus* expressly distinguished between compelled financial support for an exclusive representative and the underlying system of exclusive representation.  *Janus,* 138 S.Ct. at 2465, 2467.  The majority opinion explained that while the States may no longer require public employees to pay fair-share fees to their exclusive representatives, the States can otherwise "keep their labor-relations systems exactly as they are," including by "requir[ing] that a union serve as exclusive bargaining agent for its employees."  *Id.* at 2478, 2485 n.27; *see also id.* at 2466, 2485 n.27 (States may "follow[]the model of the federal government," in which "a union chosen by majority vote is designated as the exclusive representative of all the employees"); *id.* at 2471 n.7 ("[W]e are not in any way questioning the foundations of modern labor law.").  *Janus* observed that exclusive representation might not be permissible in "other contexts," but recognized that in the collective bargaining context, the imposition of a duty of fair representation on the exclusive representative *avoids* any constitutional questions.  *Id.* at 2469, 2478.

As such, both *Knight* and *Janus* require rejection of Plaintiffs' claim that the exclusive representation model of collective bargaining violates the First Amendment.

D.     HEERA Does Not Compel Plaintiff To Speak or To Associate with Local 2010 Within the Meaning of the First Amendment

Even if Plaintiffs' First Amendment claim were not foreclosed by on-point and longstanding precedent, it still would be meritless.  Plaintiffs do not allege that they are required to personally do or say anything to join or endorse Local 2010 or its speech.[6]

---

[5] *Knox v. SEIU Local 1000,* 567 U.S. 298 (2012) likewise involved only the collection of money from non-union members.

[6] Because Plaintiffs is not required to say or do anything by virtue of Local 2010's designation as the exclusive representative of their bargaining unit, their claim does not involve the kind of compelled speech at issue in cases like *West Virginia Bd. of Educ. v. Barnette,* 319 U.S. 624 (1943).

And neither support for Local 2010 nor Local 2010's speech is attributed to Plaintiffs in the sense that matters for First Amendment purposes, because reasonable people would not believe that all bargaining unit workers necessarily *agree with* the exclusive representative or its positions.

In *Rumsfeld v. FAIR,* 547 U.S. 47 (2006), for example, law schools were required to "'associate' with military recruiters in the sense that they interact[ed] with them." *Id.* at 69.  Nonetheless, there was no impingement of the law schools' First Amendment rights because the presence of military recruiters on campus would not lead reasonable people to believe the "law schools agree[d] with any speech by recruiters." *Id.* at 65; *see also Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 457-59 (2008) (Roberts, C.J., concurring) (explaining that certain cases involved "forced association" because outsiders would believe that parties "endorsed" or "agreed with" another party's message); *Jarvis v. Cuomo,* 2015 WL 1968224, at *6 (N.D.N.Y. Apr. 30, 2015) (explaining that "[t]he public's perception is relevant in forced association cases").

The same is true here.  Under HEERA, the chosen exclusive representative serves as the representative of the bargaining unit *collectively* and *as a whole,* rather than serving as the individual representative or agent of any particular bargaining unit member.  *See, e.g., Reisman,* 2018 WL 6312996, at *5 ("The Union is not ... [a non-member's] individual agent.  Rather, the Union is the agent for the bargaining-unit which is a distinct entity separate from the individual employees who comprise it."). Indeed, when negotiating or enforcing a collective bargaining agreement, the exclusive representative must often weigh the competing interests of different employees in the bargaining unit and determine what is best for the unit as a whole.

Because different viewpoints exist within every democratic system and because exclusive representatives represent the bargaining unit as a whole, public employers in systems of exclusive representation-based collective bargaining like that established by the HEERA reasonably understand that not all unit employees necessarily agree with

1   the union that a majority has designated as the exclusive representative.  *See Knight,*
2   465 U.S. at 276 ("The State Board considers the views expressed ... to be the faculty's
3   official collective position.  It recognizes, however, that not every instructor agrees
4   with the official faculty view....").  Moreover, just as reasonable people understand that
5   the views of a parent-teacher association, alumni association, elected congressional
6   representative, or bar association are not necessarily shared by every parent, alumnus,
7   constituent, or attorney, reasonable people understand that individuals in the
8   bargaining unit represented by Local 2010 do not necessarily agree with every position
9   taken by Local 2010.  *See, e.g., Lathrop v. Donohue,* 367 U.S. 820, 859 (1961)
10  (Harlan, J., concurring) ("[E]veryone understands or should understand that the views
11  expressed are those of the State Bar as an entity separate and distinct from each
12  individual.").

13      For these reasons, Local 2010's views are not attributed or imputed to individual
14  bargaining unit employees in a First Amendment sense.  *D'Agostino,* 812 F.3d at 244
15  (Souter, J., sitting by designation) ("[W]hen an exclusive bargaining agent is selected
16  by majority choice, it is readily understood that employees in the minority, union or
17  not, will probably disagree with some positions taken by the agent answerable to the
18  majority."); *Jarvis,* 2015 WL 1968224, at *6 ("[The Union's] representation of
19  Plaintiffs would not be likely to create the perception that Plaintiffs endorse [the
20  Union's] expressive activities.... A reasonable person would not perceive that the
21  activities of [the Union], as a majority-elected representative, ... are identical with the
22  views of the providers it represents."). Because such attribution is a necessary element
23  of plaintiff's compelled speech and association claim, Plaintiffs' claims regarding
24  "compelled association" fail for this separate reason as well.

25
26
27
28

**CONCLUSION**

For the foregoing reasons, Teamsters Local 210 respectfully requests the Court to grant this Motion to dismiss, without leave to amend, that portion of Count I of the Complaint seeking a refund of agency fees paid by Plaintiff O'Callaghan prior to the Supreme Court's decision in *Janus*, and Counts V, VI and VII of the Complaint which seek to overturn the exclusive representation foundation of California's public-sector labor relations statutes.

Dated:  May 24, 2019                          BEESON, TAYER & BODINE, APC


                                              By: _____/s/ Andrew H. Baker_____
                                              ANDREW H. BAKER
                                              Attorneys for Teamsters Local 2010

**CERTIFICATE OF SERVICE**

Case Name    O'Callaghan, Cara, et al. v. Regents    No. 2:19-cv-02289- JVS (DFM)
of the University of California, et al.

I hereby certify that on May 24, 2019, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system.

TEAMSTERS LOCAL 2010'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 24, 2019, at Oakland, California.

*/s/ Esther Aviva*
Esther Aviva
Secretary to Andrew H. Baker