1  XAVIER BECERRA
   Attorney General of California
2  ANTHONY R. HAKL
   Supervising Deputy Attorney General
3  MAUREEN C. ONYEAGBAKO
   Deputy Attorney General
4  State Bar No. 238419
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone:  (916) 210-7324
     Fax:  (916) 324-8835
7    E-mail:  Maureen.Onyeagbako@doj.ca.gov
   *Attorneys for Xavier Becerra, in his official*
8  *Capacity as Attorney General of California*

9

10                 IN THE UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14  | | |
    |---|---|
    | **CARA O'CALLAGHAN and JENEE MISRAJE,** | 2:19-cv-02289-JLS-DFM |
    | Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS BY DEFENDANT XAVIER BECERRA; MEMORANDUM OF POINTS AND AUTHORITIES** |
    | v. | |
    | **REGENTS OF THE UNIVERSITY OF CALIFORNIA; TEAMSTERS LOCAL 2010; and XAVIER BECERRA, in his Official Capacity as Attorney General of California,** | Date:          September 9, 2019<br>Time:          1:30 pm<br>Courtroom:  10C<br>Judge:        Hon. James V. Selna |
    | Defendants. | Trial Date:   NA<br>Action Filed: March 27, 2019 |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE ................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

INTRODUCTION ................................................................................................. 2

FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

    I.     Plaintiffs and the Teamsters Union ........................................... 3

    II.    California's Collective Bargaining System ................................ 4

    III.   Procedural History and Claims for Relief.................................. 5

LEGAL STANDARD ........................................................................................... 6

ARGUMENT ........................................................................................................ 7

    I.     Plaintiffs Cannot State a Constitutional Challenge to the Dues-Maintenance Statutes Because Their Purported Harms Do Not Arise From Any State Action, But From Their Private Membership Agreement with the Union ................................... 7

          A.    The Post-Janus Dues Deduction Was Not Based on a Right or Privilege Created by the State ..................................... 9

          B.    The Teamsters Union Is Not a State Actor.............................. 10

               1.    The "Public Function" Test...................................... 10

               2.    The "Joint Action" Test............................................ 11

               3.    The "State Compulsion" Test.................................... 12

               4.    The "Governmental Nexus" Test............................... 12

    II.    Plaintiffs' Constitutional Challenge to the State's Exclusive Representation Laws Fails as a Matter of Law................................. 13

          A.    The Supreme Court and Ninth Circuit Have Repeatedly Recognized that Exclusive Representation Is Constitutional Because It Serves a Compelling State Interest ................................................................. 13

          B.    Plaintiffs Misapply Janus, Which Did Not Disturb Exclusive-Representation Arrangements ................................. 15

          C.    State Law Does Not Compel Association with the Union ....... 16

CONCLUSION.................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

CASES

*Abood v. Bd. of Educ.*
   431 U.S. 209 (1977) ....................................................................... 14

*Adams v. Johnson*
   355 F.3d 1179 (9th Cir. 2004) .......................................................... 6

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*
   526 U.S. 40 (1999) ...................................................................... 9, 10

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................ 7

*Babb v. Cal. Teachers Ass'n*
   ___ F. Supp. 3d ___ (C.D. Cal. 2019) ............................................. 15

*Bain v. Cal. Teacher Ass'n*
   156 F. Supp. 3d 1142 (C.D. Cal. 2015) .............................................. 7

*Bain v. Cal. Teachers Ass'n*
   No. 2:15-cv-02465-SVW-AJW, 2016 WL 6804921
   (C.D. Cal. May 2, 2016) ............................................................ 10, 13

*Belgau v. Inslee*
   359 F. Supp. 3d 1000 (W.D. Wash. Feb. 15, 2019) ........................... 9

*Belgau v. Inslee*
   No. 18-5620 RJB, 2019 WL 652362 (W.D. Wash. Oct. 11, 2018) ..... 10

*Bell Atl. v. Twombly*
   550 U.S. 544 (2007) ........................................................................ 7

*Blum v. Yaretsky*
   457 U.S. 991 (1982) ................................................................. 8, 9, 12

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*
   590 F.3d 806 (9th Cir. 2010) ..................................................... 7, 9, 12

*Cervantes v. Countrywide Home Loans, Inc.*
   656 F.3d 1034 (9th Cir. 2011) .......................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Cobb v. Saturn Land Co., Inc.*
 966 F.2d 1334 (10th Cir. 1992) .......................................................................... 10

*Delgado v. Smith*
 861 F.2d 1489 (11th Cir. 1988) ............................................................................ 9

*Erickson v. Pardus*
 551 U.S. 89 (2007) ............................................................................................... 6

*Evans v. Newton*
 382 U.S. 296 (1966) ...................................................................................... 10, 11

*Florer v. Congregation Pidyon Shevuyim, N.A.*
 639 F.3d 916 (9th Cir. 2011) .............................................................................. 11

*Galbraith v. Cnty. of Santa Clara*
 307 F.3d 1119 (9th Cir. 2002) .............................................................................. 6

*Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*
 570 F.3d 811 (7th Cir. 2009) .............................................................................. 13

*Janus v. American Federation of State, County, and Municipal*
 *Employees Council 31*
 138 S. Ct. 2448 (2018) ...............................................................................*passim*

*Kidwell v. Transp. Commc'ns Int'l Union*
 946 F.2d 283 (4th Cir. 1991) .............................................................................. 13

*Knievel v. ESPN*
 393 F.3d 1068 (9th Cir. 2005) .............................................................................. 6

*Lee v. City of Los Angeles*
 250 F.3d 668 (9th Cir. 2001) ................................................................................ 6

*Lee v. Katz*
 276 F.3d 550 (9th Cir. 2002) ......................................................................... 10, 11

*Lopez v. Dep't of Health Servs.*
 939 F.2d 881 (9th Cir. 1991) .............................................................................. 12

iii

1
2

# TABLE OF AUTHORITIES
### (continued)

Page

*Lugar v. Edmonson Oil Co., Inc.*
    457 U.S. 922 (1982) ...............................................................................7, 8

*Mentele v. Inslee*
    916 F.3d 783 (9th Cir. 2019) ...............................................13, 14, 15, 16

*Minnesota State Board v. Knight*
    465 U.S. 271 (1984) ..................................................................14, 15, 16

*Naoko Ohno v. Yuko Yatsuma*
    723 F.3d 984 (9th Cir. 2013) ...............................................................*passim*

*Padilla v. Lever*
    463 F.3d 1046 (9th Cir. 2006) ...............................................................9

*Rendell-Baker v. Kohn*
    457 U.S. 830 (1982) .............................................................................11

STATUTES

42 United States Code § 1983 ...............................................................2, 7

Government Code
    § 1157.12 ..............................................................................................1, 5
    § 1157.12(a) ..........................................................................................5, 6
    § 1157.12(b) ..........................................................................................5, 12
    § 3513(i) ...............................................................................................1, 6, 12
    § 3515 ..................................................................................................1, 6
    § 3515.5 ...............................................................................................1, 6
    § 3570 ..................................................................................................6, 16
    § 3571.1(e) ...........................................................................................6, 16
    § 3574 ..................................................................................................6, 16
    § 3578 ..................................................................................................6, 16
    § 3583 ..................................................................................................1, 6

COURT RULES

Central District of California Local Rule, Rule 7-3 ...................................1

Federal Rule of Civil Procedure 12(b)(6)...............................................1, 6

iv

# TABLE OF AUTHORITIES
### (continued)

Page

**LEGISLATIVE ACTS**

Senate Bill No. 866 (Cal. Stat. 2018, ch. 53) .............................................................5

Cal. Senate Com. on Budget and Fiscal Review, 3d reading analysis of
 Sen. Bill No. 866, as amended June 13, 2018
 http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill
 _id=201720180SB866#.....................................................................................5

**OTHER AUTHORITIES**

California Department of Human Resources, Bargaining/Contracts
 http://www.calhr.ca.gov/state-hr-professionals/Pages/bargaining-
 contracts.aspx ...................................................................................................5

California Legislative Analyst's Office—Bargaining Unit Profiles
 https://lao.ca.gov/stateworkforce/BargainingUnits?unit=0.................................4

United States Census—Number of Employees at the State and Local
 Level by State: 2012
 https://www2.census.gov/govs/apes/2012_summary_report.pdf.........................4

**<u>NOTICE</u>**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 9, 2019, or as soon thereafter as the matter may be heard before the Honorable James V. Selna in Courtroom 10C of the United States District Court for the Central District of California, located at the Ronald Reagan Federal Building & U.S. Courthouse, 411 West 4th Street, Santa Ana, CA 92701, Defendant Xavier Becerra, in his official capacity as Attorney General of the State of California, will and hereby does move this Court for an order dismissing the Complaint as to Attorney General Becerra, without leave to amend, under Federal Rule of Civil Procedure 12(b)(6).

This motion to dismiss is brought on the grounds that (1) Plaintiffs cannot state a constitutional challenge to Government Code sections 1157.12, 3513(i), 3515, 3515.5, or 3583, because the challenged conduct—continued deduction of union dues—is not a state action, and (2) Plaintiffs' constitutional challenge to California's exclusive-representation laws is foreclosed by Supreme Court and Ninth Circuit authorities upholding the constitutionality of such arrangements.

This motion to dismiss is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 17, 2019.

Defendant Becerra bases the motion to dismiss on this notice, the supporting memorandum of points and authorities, the pleadings, records, and files in this action, and such other matters as may properly come before the Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant Xavier Becerra moves to dismiss the Complaint for the same reasons addressed in his opposition to Plaintiffs' motion for preliminary injunction (ECF No. 41, May 20, 2019), which is incorporated here by reference.  This case follows *Janus v. American Federation of State, County, and Municipal Employees Council 31*, 138 S. Ct. 2448 (2018), and Plaintiffs O'Callaghan's and Misraje's desire to stop immediately the continued deduction of union dues from their paychecks, following their resignations from the union.

But Plaintiffs have not sufficiently stated claims for relief under 42 U.S.C. § 1983, because their constitutional challenges to the state's dues-maintenance and exclusive-representation statutes fail as a matter of law.  With respect to the dues-maintenance provisions, Plaintiffs' alleged injuries do not arise from any state action but rather from their private agreement with the Teamsters Local 2010 union. Contrary to Plaintiffs' contention, *Janus*'s holding regarding fair-share agency fees of *non-members* does not permit union members, which is what Plaintiffs were at the time of the *Janus* decision, to renege on their contractual obligation to pay union dues for a specified period of time after resigning membership.

Nor are Plaintiffs entitled to relief as a matter of law on their challenge to state laws addressing exclusive-representation arrangements.  *Janus* expressly did not disturb exclusive-representation arrangements, and multiple courts have recognized that exclusive representation serves a compelling state interest.  The state laws at issue here do not compel Plaintiffs' association with the union.  Instead, they simply recognize the right of public employees to enter into private contracts with unions and to negotiate collectively on the terms and conditions of public employment.

For these reasons, Plaintiffs cannot state a claim for relief regarding the constitutionality of the state laws at issue here, and Attorney General Becerra respectfully requests that this Court dismiss the claims without leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. PLAINTIFFS AND THE TEAMSTERS UNION

Plaintiff O'Callaghan currently works as a finance manager at the University of California, Santa Barbara (UCSB). (Compl. ¶ 7, Mar. 27, 2019, ECF No. 1.)[1] She has continuously worked for UCSB since August 2009, and previously worked for UCSB from 2000 to 2004. (*Id.* ¶ 14.) "When O'Callaghan began her latest stint of employment at UCSB" in August 2009, she paid only fair-share fees until joining the Teamsters union in May 2018.[2] (*Id.* ¶¶ 15, 16.)

On July 25, 2018, after learning about the *Janus* decision, O'Callaghan sent the Teamsters a letter resigning from the union, as well as a written request to UCSB requesting that it stop deducting union dues from her paycheck. (*Id.* ¶ 17.) The Teamsters responded with a letter dated July 24, 2018, informing O'Callaghan that she was free to resign her membership at any time but that payroll deductions would continue unless and until she gave notice pursuant to the terms of the collective bargaining agreement between the Teamsters and the University of California. (*Id.* ¶ 18.) Those terms required that the resignation request be sent during the thirty days prior to expiration of the collective-bargaining agreement on March 31, 2022. (*Id.* ¶ 19.) UCSB directed O'Callaghan's request to the union, which confirmed that the dues deductions should continue. (*Id.* ¶¶ 20–21.) The Complaint estimates deductions of approximately $41 per month in union dues from O'Callaghan's paycheck. (*Id.* ¶ 24.)

---

[1] Attorney General Becerra has attached a copy of the Complaint as Exhibit A, in compliance with the Court's standing order. (Initial Order Following Filing of Complaint Assigned to Judge Selna 6, May 1, 2019, ECF No. 29.)

[2] It is not clear from the Complaint whether O'Callaghan was a union member while working for UCSB from 2000 to 2004. (Compl. ¶ 14.)

Plaintiff Misraje has been employed by the University of California, Los Angeles (UCLA) since May 2015.  (*Id.* ¶ 25.)  She joined the Teamsters and authorized dues deductions in July 2015.  (*Id.* ¶ 26.)  On August 8, 2018, Misraje requested to withdraw her union membership.  (*Id.* ¶ 27.)  The union advised Misraje that she "would be dropped as a full member of the Union, but she could not end the deduction of union dues from her paycheck" at that time.  (*Id.* ¶ 28.)  Misraje followed up with additional written requests to the union and to UCLA, requesting immediate termination of the dues deductions.  (*Id.* ¶¶ 29, 32, 34, 36, 37.)  Neither entity stopped the deductions.  (*Id.* ¶¶ 30, 31, 33, 35, 38, 39.)  Under the terms of Misraje's union application, she must send the notice to stop dues deductions "'at least sixty (60) days, but not more than seventy-five (75) days' before the anniversary date of the signed agreement."  (*Id.* ¶ 40.)  Misraje estimates deductions of approximately $53 per month from her paycheck for union dues.  (*Id.* ¶ 41.)

## II.   CALIFORNIA'S COLLECTIVE BARGAINING SYSTEM

There are more than two million state and local public employees in California, most of whom are represented by labor unions or other labor organizations.[3]  The many different agencies and entities of the State of California employ over 200,000 people.[4]  Over 80 percent of those employees, comprising 21 different bargaining units, are represented by labor unions.[5]  The state's collective bargaining system provides a regulated mechanism by which unions representing rank-and-file employees and public employers can negotiate terms and conditions

---

[3] *See* United States Census—Number of Employees at the State and Local Level by State: 2012, https://www2.census.gov/govs/apes/2012_summary_report.pdf (as of May 13, 2019).

[4] *See* California Legislative Analyst's Office—Bargaining Unit Profiles, https://lao.ca.gov/statewideworkforce/BargainingUnits?unit=0 (as of May 13, 2019).

[5] See *id.*

4

of employment—including wages, hours, and benefits—that can be applied uniformly across a broad and diverse workforce.[6]

To facilitate administration of this immense collective bargaining system, California has enacted numerous laws. As relevant here, on June 27, 2018, the California Legislature enacted Senate Bill No. 866 (Cal. Stat. 2018, ch. 53), which added section 1157.12 to the California Government Code. Section 1157.12 specifies procedures for public employees to adjust or stop payroll deductions for union membership. Under these procedures, "public employers other than the state" must direct "employee requests to cancel or change authorizations for employee organizations to the employee organization" itself. *See* Cal. Gov't Code § 1157.12(b).[7] In turn, these public employers must rely on certifications provided by employee organizations regarding individual employee authorizations of payroll deductions. *See* § 1157.12(a); *see also id.* (requiring employee organizations to indemnify the public employer for any claims made by employees for payroll deductions made in reliance on an employee organization's certification). By relying on unions' administration of their own membership records to determine employees' dues commitments, the Legislature sought to codify existing practices and "[clarify] the administration of payroll deductions and salary deductions by public employers or the Controller for these purposes."[8]

## III.  PROCEDURAL HISTORY AND CLAIMS FOR RELIEF

On March 27, 2019, Plaintiffs filed their Complaint for declaratory relief, injunctive relief, and damages based on alleged First Amendment violations.

---

[6] *See* California Department of Human Resources, Bargaining/Contracts, http://www.calhr.ca.gov/state-hr-professionals/Pages/bargaining-contracts.aspx (as of May 13, 2019).

[7] Unless otherwise noted, all further statutory references are to the California Government Code.

[8] *See* Cal. Senate Com. on Budget and Fiscal Review, 3d reading analysis of Sen. Bill No. 866, at p. 3, as amended June 13, 2018, http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB866#. (as of May 24, 2019).

1   (Compl., Mar. 27, 2019, ECF No. 1.)  Defendants are the Regents of the University

2   of California, Teamsters Local 2010, and Xavier Becerra, in his official capacity as

3   California Attorney General.  Plaintiffs seek to stop the deduction of dues from

4   their paychecks, following their notice of withdrawal to the union.  To accomplish

5   this, Plaintiffs seek an order enjoining Attorney General Becerra from enforcing

6   (1) Government Code sections 1157.12, 3513(i), 3515, 3515.5, 3583, and all other

7   provisions of California law that require Plaintiffs to wait until a specified window

8   of time to stop the payroll deductions without their affirmative consent

9   (collectively, the dues-maintenance statutes), and (2) Government Code sections

10  3570, 3571.1(e), 3574, 3578), and all other provisions of California law that

11  provide for exclusive representation of public employees who do not affirmatively

12  consent to union membership (collectively, the exclusive-representation statutes).

13  (Compl., Prayer for Relief.)

14              **LEGAL STANDARD**

15       Federal Rule of Civil Procedure 12(b)(6) authorizes motions to dismiss for

16  "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

17  In considering a motion to dismiss, the court must accept all material facts alleged

18  in the complaint as true and construe them in the light most favorable to the

19  nonmoving party.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Knievel v. ESPN*,

20  393 F.3d 1068, 1072 (9th Cir. 2005).  The court need not accept conclusory

21  allegations and unwarranted inferences.  *Adams v. Johnson*, 355 F.3d 1179, 1183

22  (9th Cir. 2004) (citation omitted).  The court may also disregard factual allegations

23  that are contradicted by matters or documents necessarily relied on by the

24  complaint whose authenticity no party questions.  *Lee v. City of Los Angeles*, 250

25  F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty.*

26  *of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

27       To survive dismissal under Rule 12(b)(6), a complaint must be plausible on its

28  face, meaning that it provides sufficient factual detail that "allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S.
544, 570 (2007)).  "Dismissal is proper when the complaint does not make out a
cognizable legal theory or does not allege sufficient facts to support a cognizable
legal theory."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041
(9th Cir. 2011).

## ARGUMENT

### I.   PLAINTIFFS CANNOT STATE A CONSTITUTIONAL CHALLENGE TO THE DUES-MAINTENANCE STATUTES BECAUSE THEIR PURPORTED HARMS DO NOT ARISE FROM ANY STATE ACTION, BUT FROM THEIR PRIVATE MEMBERSHIP AGREEMENT WITH THE UNION

"To state a claim under § 1983, a plaintiff must show that the allegedly
unconstitutional conduct is fairly attributable to the State."  *Bain v. Cal. Teacher
Ass'n*, 156 F. Supp. 3d 1142, 1149 (C.D. Cal. 2015) (citing *Caviness v. Horizon
Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)).  "At bottom, the state
action requirement serves to 'avoid[ ] imposing on the State, its agencies or
officials, responsibility for conduct for which they cannot fairly be blamed.'"
*Naoko Ohno v. Yuko Yatsuma*, 723 F.3d 984, 994 (9th Cir. 2013) (quoting *Lugar v.
Edmonson Oil Co., Inc.*, 457 U.S. 922, 936 (1982)).  Plaintiffs' constitutional
challenges to the dues-maintenance statutes fail as a matter of law because their
claimed injuries arise not from the statues, but from their voluntary decisions to join
the union and the terms of their union membership agreements.  (Compl. ¶¶ 24, 41
(alleging that the Regents continue to deduct union dues from Plaintiffs' paychecks
despite their "repeated requests that the deductions be stopped"); 47 ("In acting in
concert with the Regents, the Union . . . is utilizing the state payroll system to exact
its dues and is acting pursuant to an exclusive collective bargaining agreement
negotiated with a state entity.").)

The Ninth Circuit has previously considered the level of governmental
involvement needed to elevate private action to the level of state action in order to
trigger constitutional scrutiny.  *Naoko Ohno* addressed a district court's recognition

and enforcement of a tort judgment issued by a Japanese court. *Id.* at 986–87, 989–90.  On appeal, the defendant argued that the district court's recognition and enforcement of the Japanese court's judgment violated the First Amendment's Free Exercise Clause. *Id.* at 987.  In analyzing whether the district court's action constituted a state action, the Ninth Circuit determined that constitutional scrutiny is only triggered "when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.* at 994 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (emphasis in original).  The court applied a two-prong test to determine whether governmental involvement in private action had sufficient impact to make the government responsible for the alleged harm:

> The first prong asks whether the claimed constitutional deprivation resulted from "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible." [Citation.]  The second prong determines whether the party charged with the deprivation could be described in all fairness as a state actor.

*Id.* at 995 (quoting *Lugar*, 457 U.S. at 937).  Ultimately, the Ninth Circuit held that the district court decision did not constitute a state action. *Id.* at 987.

Here, Plaintiffs ask this Court to enjoin enforcement of the dues-maintenance statutes because they allegedly violate Plaintiffs' First Amendment rights.  But the actual constitutional injuries Plaintiffs allege arise exclusively from the union's decision to continue to deduct dues from their paychecks.  This injury is not fairly attributable to the dues-maintenance statutes, which merely require that public employers direct requests to cancel payroll deductions to the union, and to rely on information provided by the union regarding whether deductions were properly canceled or changed, or to any other state action.

### A.   The Post-*Janus* Dues Deduction Was Not Based on a Right or Privilege Created by the State

The dues deductions at issue here did not result from the exercise of some right or privilege created by the state, a rule of conduct imposed by the state, or by a person for whom the state is responsible.  Plaintiffs' ability to revoke their dues authorizations is determined exclusively by the terms of their membership agreements, and Plaintiffs have not alleged that the state played a role in the formation or execution of those agreements.  (*See* Compl. ¶¶ 56–61, 80–84.)  On this basis alone, Plaintiffs' claims fail the first prong of the "state action" test.

The applicable laws here simply recognize that employees and unions *may* enter into these arrangements.  Such acknowledgement does not rise to the level of state action.  *See, e.g., Caviness*, 590 F.3d at 817 ("[A]ction taken by private entities with the mere approval or acquiescence of the State is not state action.") (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (*Sullivan*)); *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1014 (W.D. Wash. Feb. 15, 2019) (quoting same), appeal docketed No. 19-35137 (9th Cir. Feb. 20, 2019) (citing same).  Likewise, the collective bargaining agreement's reference to the membership agreement's dues-maintenance provisions (Compl. ¶ 19) does not amount to state action.  Plaintiffs do not—and cannot allege—that the state required them to join the union, or that it required the union to include a dues-maintenance provision in the membership agreement.  Because the state is not "responsible for the specific conduct of which the plaintiff complains," their First Amendment challenge to the continued payroll deductions fails as a matter of law.  *Naoko*, 723 F.3d at 994 (quoting *Blum*, 457 U.S. at 1004) (emphasis in original).

Finally, the state's ministerial function of continuing to process Plaintiffs' dues deductions after their resignations does not amount to state action implicating constitutional protections.  *See Padilla v. Lever*, 463 F.3d 1046, 1062 (9th Cir. 2006) (citing *Delgado v. Smith*, 861 F.2d 1489, 1495–96 (11th Cir. 1988) for the

proposition that a state's ministerial approval of a voter initiative did not constitute state action); *see also Cobb v. Saturn Land Co., Inc.*, 966 F.2d 1334, 1337 (10th Cir. 1992) ("[A]ctions of a county clerk, who merely accepted and recorded the required lien materials prepared by Defendant and then issued filing notices to Plaintiff," were not state actions sufficient to invoke constitutional protection); *Belgau v. Inslee*, No. 18-5620 RJB, 2019 WL 652362, at *8 (W.D. Wash. Oct. 11, 2018) ("The State Defendants' obligation to deduct fees in accordance with the authorization 'agreements does not transform decisions about membership requirements . . . into state action.'") (quoting *Bain v. Cal. Teachers Ass'n*, No. 2:15-cv-02465-SVW-AJW, 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016)).

For these reasons, the union's enforcement of the membership agreement's dues-maintenance terms—the cause of Plaintiffs' alleged injury—does not satisfy the first prong of the "state action" test.

**B.   The Teamsters Union Is Not a State Actor**

Even if Plaintiffs could satisfy the first prong of the state action test, their constitutional challenge to the continued collection of dues fails at the second prong because the Teamsters is not a state actor.  The Supreme Court has articulated four tests to determine whether a non-governmental entity's actions amount to state action:  (a) the public function test; (b) the joint action test; (c) the state compulsion test; and (d) the governmental nexus test.  *Naoko Ohno*, 723 F.3d at at 995 (internal citations omitted); *Sullivan*, 526 U.S. at 52–58.  As discussed below, the continued payroll deductions under the terms of Plaintiffs' membership agreements do not satisfy any of the four tests to establish the union as a state actor.

**1.   The "Public Function" Test**

 "Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'"  *Lee v. Katz*, 276 F.3d 550, 554–55 (9th Cir. 2002) (quoting *Evans v.*

10

*Newton*, 382 U.S. 296, 299 (1966)).  "To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental."  *Id.* at 555 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)).

As previously discussed, the state has not endowed the Teamsters "with powers or functions governmental in nature."  *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011).  The imposition of a dues requirement for employees who choose union membership, and the enforcement of contract terms governing the termination of that requirement are neither "traditionally" nor "exclusively governmental" functions.  *Lee*, 276 F.3d at 555.  Rather, they are matters of contract that arise out of union membership agreements.

### 2.    The "Joint Action" Test

A "'[j]oint action' exists where the government affirms, authorizes, encourages, or facilities unconstitutional conduct through its involvement with a private party."  *Naoko Ohno*, 723 F.3d at 996.  Here, Plaintiffs voluntarily authorized the deduction of union dues from their paychecks.  (Compl. ¶¶ 16, 26.)  The state did not affirm, authorize, encourage, or facilitate the contents of the membership agreement.  And its role in facilitating the deductions does not amount to "significant assistance" in the negotiation of the membership agreement or the union's enforcement of it.  *See Naoko Ohno*, 723 F.3d at 996 ("[T]he district court's enforcement order facilitates [plaintiff's] efforts to recover . . . the sum of money awarded by the Japanese court.  But . . . its implementation of the procedures . . . cannot be said to provide 'significant assistance' to the underlying acts that . . . constituted the core violation[.]").  Similarly, the state's recognition of a union as the exclusive bargaining representative does not constitute "significant assistance" because that status is based on the majority vote of public employees who are union members, and not on any action by the state.

### 3.   The "State Compulsion" Test

Under the "state compulsion" test, "[a] state may be responsible for a private entity's actions if 'it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"  *Caviness*, 590 F.3d at 816 (quoting *Blum*, 457 U.S. at 1004). Here, the terms governing revocation of Plaintiffs' dues deduction are matters of contract between Plaintiffs and the union.  The state did not co-sign the Teamsters' membership agreement, and Plaintiffs have not alleged that the state exercised coercive power over the union or played any role whatsoever in the creation or execution of the terms for dues deduction.  To the contrary, state law requires public employers to keep at arm's length from any changes to membership dues deductions, by "direct[ing] employee requests to cancel or change deductions for employee organizations to the employee organization," (§ 1157.12(b)), and respecting the right of state employees to form, join, and participate in activities of employee organizations, and entering into maintenance-of-membership provisions, (§ 3513(i)).

### 4.   The "Governmental Nexus" Test

"Under the governmental nexus test, a private party acts under color of state law if 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'"  *Naoko Ohno*, 723 F.3d at 995 n. 13 (quoting *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (internal citations omitted)).  Here, the Teamsters' enforcement of Plaintiffs' membership agreements cannot be treated as an action of the state itself.  To the contrary, the union's decision to include the dues-maintenance provision in its membership agreements, and to enforce such provisions against Plaintiffs was made entirely independent of the state.  "Courts have regularly rejected attempts to find state action in the internal

decisions of unions even when they are given exclusive bargaining authority by state law." *Bain*, 2016 WL 6804921, at *7.

Moreover, the "government's ministerial obligation to deduct dues" for union members "does not transform decisions about membership requirements into state actions." *Id.* (citing *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 817 (7th Cir. 2009)); *accord Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 298 (4th Cir. 1991) (the government cannot be held responsible for a union's membership criteria because the governmental authority conferred upon the union did not specifically authorize or require the action complained of). State law does not prescribe any specific action that the Teamsters must (or should) take in either creating or enforcing a dues-deduction requirement against Plaintiffs. Accordingly, the union's continued deduction of membership dues lacks the governmental nexus necessary to invoke constitutional scrutiny.

Because Plaintiffs have not and cannot allege a state action or that the union is a state actor, they cannot show government involvement sufficient in character and impact that would make the state responsible for the alleged harm caused by the union's continued deduction of membership dues from their paychecks. *See Naoko Ohno*, 723 F.3d at 937–42. Thus, Plaintiffs' constitutional challenge to the dues-maintenance statutes must be dismissed.

## II. PLAINTIFFS' CONSTITUTIONAL CHALLENGE TO THE STATE'S EXCLUSIVE REPRESENTATION LAWS FAILS AS A MATTER OF LAW

### A. The Supreme Court and Ninth Circuit Have Repeatedly Recognized that Exclusive Representation Is Constitutional Because It Serves a Compelling State Interest

The Ninth Circuit recently rejected a claim by public employees that the state's authorization of an exclusive bargaining arrangement violated First Amendment rights to free speech and free association. *Mentele v. Inslee*, 916 F.3d 783, 784 (9th Cir. 2019). This decision directly applies here and forecloses Plaintiffs' claim.

In *Mentele*, the Ninth Circuit held that "*Janus* did not revisit the longstanding conclusion that labor peace is 'a compelling state interest[.]'" *Id.* at 787, 790 (citing *Janus*, 138 S. Ct. at 2465–66). Indeed, the Ninth Circuit agreed that the minimal impact on associational rights resulting from exclusive representation is justified because "exclusive representation is necessary to facilitate labor peace; without it, employers might face 'inter-union rivalries' fostering 'dissension within the work force,' 'conflicting demands from different unions,' and confusion from multiple agreements or employment conditions[.]" *Id.* at 790 (quoting *Abood v. Bd. of Educ.*, 431 U.S. 209, 220–21).

In reaching its decision, the *Mentele* court relied on *Minnesota State Board v. Knight*, 465 U.S. 271 (1984) (*Knight*), in which the Supreme Court upheld the constitutionality of exclusive-bargaining representation for public employees. *Knight* involved a First Amendment challenge by non-union member college faculty excluded from the "meet and confer" process under the state labor relations action. The state labor relations act authorized employers to "meet and negotiate" with the exclusive representative over the terms of their employment, and authorized college faculty to "meet and confer" with employers on non-mandatory matters related to their employment but outside the scope of mandatory bargaining. *Id.* at 274. If, however, the employees had selected an exclusive representative, only the exclusive representative could "meet and confer" with the employer about non-mandatory subjects. *Id.* at 273–75, 279. The Supreme Court summarily affirmed the "meet and negotiate" requirement, and held that the "meet and confer" process did not violate the First Amendment rights of non-union members. *Id.* at 279, 288. In so finding, the Court held that the "[plaintiffs] have no constitutional right to force the government to listen to their views. They have no such right as members of the public, as government employees, or as instructors in an institution of higher education." *Id.* at 283. Thus, the government was "free to consult or not to consult whomever it pleases." *Id.* at 285.

1    *Knight* also analyzed whether a state labor relations act violated employees'

2    First Amendment rights to freedom of speech and association. *Id.* at 288.  The

3    Court concluded that the state had not restrained appellees' rights to speak on

4    education-related issues or to associate or not associate with whomever they

5    pleased, including the representative. *Id.* at 1059–60.  Nor had the state suppressed

6    any of Plaintiffs' ideas. *Knight*, 465 U.S. at 289.  And while the "meet and confer"

7    process "amplifies" the exclusive representative's voice in the policy making

8    process, that amplification did not impair individual instructors' constitutional

9    freedom to speak and that "[a] person's right to speak is not infringed when

10   government simply ignores that person while listening to others." *Id.*

11   *Mentele* and *Knight* foreclose Plaintiffs' claims that California's exclusive-

12   representation statutes violates the First Amendment, which therefore fail as a

13   matter of law.

**B.    Plaintiffs Misapply *Janus*, Which Did Not Disturb Exclusive-
        Representation Arrangements**

16   Contrary to Plaintiff's contention, (Compl. ¶ 70), *Janus* did not address the

17   constitutionality of exclusive-representation arrangements, but rather only "the

18   constitutionality of compelling full-fledged, non-union member state employees to

19   pay agency fees." *Mentele*, 916 F.3d at 787 (citing *Janus*, 138 S. Ct. at 2459–60).

20   Indeed, *Janus* "alluded to the propriety of exclusive representation arrangements,"

21   by concluding that except for their agency-fee arrangements, "[s]tates can keep

22   their labor-relations systems exactly as they are," *id.* (quoting *Janus*, 138 S. Ct. at

23   2485 n.27).  *See also Mentele*, 916 F.3d. at 788 (recognizing that *Janus* did not

24   disturb exclusive-representation systems); *Babb v. Cal. Teachers Ass'n*,

25   ___ F. Supp. 3d ___, 2019 WL 2022222, at *18 (C.D. Cal. 2019) (same).

26   Accordingly, *Janus* has no bearing on the constitutionality of exclusive-

27   representation arrangements, which the Supreme Court expressly upheld over 40

28   years ago.

### C.   State Law Does Not Compel Association with the Union

Plaintiffs allege that the exclusive-representation statutes compel them to allow the union to speak on their behalf as a condition of their employment. (Compl. ¶¶ 73, 74.)  No such mandate exists.  Section 3570 requires higher education employers to meet and confer with a bargaining unit's chosen exclusive representative.  § 3570.[9]  Sections 3571.1(e) and 3578 impose a duty on the exclusive representative to represent all employees in the bargaining unit "fairly and impartially."[10]  Section 3574 requires higher education employers to recognize an exclusive representative unless, for example, the employer has reason to doubt that the union has majority support of its members, or another employee organization challenges the appropriateness of the exclusive representative.  But nothing in the exclusive-representation statutes compels Plaintiffs to associate with the Teamsters.  Rather, they impose a duty of fair representation on unions and require higher education employers to recognize the union designated by the majority of members in Plaintiffs' bargaining unit as the exclusive representative.

While exclusive representation requires the state to treat the position of the exclusive representatives as a collective position of members in the unit, this in no way restrains Plaintiffs' "freedom to associate or not to associate with whom they please, including the exclusive representative."  *Mentele*, 916 F.3d at 788–89 (quoting *Knight*, 465 U.S. at 288).  Thus, the laws recognizing exclusive representation place a minimal burden on associational rights in the collective bargaining context.  *Janus*, 138 S. Ct. at 2478; *Mentele*, 465 U.S. at 788.

---

[9] Under section 3570, "[h]igher education employers, or such representatives as they may designate, shall engage in meeting and conferring with the employee organization selected as exclusive representative of an appropriate unit on all matters within the scope of representation."

[10] Section 3571.1(e) makes it unlawful for a union to: (e) Fail to represent fairly and impartially all the employees in the unit for which it is the exclusive representative."  Under section 3578, the exclusive representative "shall represent all employees in the unit, fairly and impartially. A breach of this duty [occurs] if the [union's] conduct in representation is arbitrary, discriminatory, or in bad faith."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CONCLUSION

For the foregoing reasons, Plaintiffs fail to state First Amendment claims upon which relief can be granted with respect to the dues-maintenance statutes and exclusive-representation statutes.  Accordingly, Defendant Becerra respectfully requests that the Court grant this motion to dismiss without leave to amend.

Dated:  May 24, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

*/S/ MAUREEN C. ONYEAGBAKO*

MAUREEN C. ONYEAGBAKO
Deputy Attorney General
*Attorneys for Xavier Becerra,*
*in his official Capacity as Attorney*
*General of California*

SA2019101538
13769181.docx

# CERTIFICATE OF SERVICE

Case Name: **O'Callaghan, Cara, et al. v.**        No.    **2:19-cv-02289-JLS-DFM**
**Regents of the University of**
**California, et al.**

I hereby certify that on <u>May 24, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION AND MOTION TO DISMISS BY DEFENDANT XAVIER BECERRA; MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>May 24, 2019</u>, at Sacramento, California.

Tracie L. Campbell                    */s/ Tracie L. Campbell*
Declarant                              Signature

SA2019101538
13765610.docx