Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

Brian K. Kelsey (*Pro Hac Vice*)
bkelsey@libertyjusticecenter.org
Reilly Stephens (*Pro Hac Vice*)
rstephens@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cara O'Callaghan and Jenée Misraje,<br><br>Plaintiffs,<br><br>v.<br><br>Regents of the University of California *et al.*,<br><br>Defendants. | Case No. 2:19-cv-02289-JVS-DFM<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: June 10, 2019<br>Time: 1:30 p.m.<br>Judge: Hon. James V. Selna |

Plaintiffs, Cara O'Callaghan ("O'Callaghan") and Jenée Misraje ("Misraje") (collectively, "Plaintiffs"), respectfully file this Reply to the Opposition of Teamsters

Local 2010 (the "Union"); the Regents of the University of California ("the Regents"); and Xavier Becerra, in his official capacity as Attorney General of California ("General Becerra") (collectively, "Defendants") and in support of Plaintiffs' motion for a preliminary injunction against Defendants do hereby state as follows.

**I. Plaintiffs are likely to succeed on the merits of their claim that continued deduction of union dues violates their First Amendment rights.**

*Janus v. AFSCME* 138 S. Ct. 2448, 2478 (2018) expressly prohibits the deduction of union dues from nonmembers of the union; therefore, the Union's attempted separation of union dues deductions from union membership must be enjoined. As the Supreme Court stated, "Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages." *Id*. at 2486. In direct defiance of *Janus*, the Union now argues that membership resignation and dues payments are somehow distinct. It claims to have released Plaintiffs from membership even though it continues to take their money. *See* Teamsters Local 2010 Opposition to the Motion for Preliminary Injunction (Dkt. 34) at 5-6. A forced union dues deduction from a nonmember of the union is the very definition of an agency fee. Because *Janus* banned agency fees, the Union's contention runs headlong into the holding of *Janus*. The Union even acknowledges the meaning of *Janus* in its own Opposition: "[A]fter Janus, [Plaintiffs] need not even provide any financial support to Local 2010." *Id.* at 17. Therefore, Plaintiffs, relying on a recent U.S. Supreme Court case on point, are likely to succeed on the merits, and the Union's actions in opposition to the ruling should be enjoined.

The Union relies on a string of NLRB decisions in support of its position. *See Steelworkers Local 4671 (National Oil Well, Inc.),* 302 NLRB 367, 368 (1991); *N.L.R.B. v. U.S. Postal Serv.,* 833 F.2d 1195, 1196 (6th Cir. 1987); *NLRB v. Granite State Joint Bd. Textile Workers Union*, 409 U.S. 213, 216 (1972). As statements of law, such citations are irrelevant, as the federal labor board has no jurisdiction over state employees like Plaintiffs. Moreover, these citations amount to little more than a contention that a union

authorization is a type of contract that can create binding obligations. Plaintiffs do not dispute this and have never disputed it. What Plaintiffs dispute is whether any such contract was validly formed.

The union agreements that Plaintiffs entered into were executed without Plaintiffs' knowledge of their rights. Since there was no such knowledge, there could not have been a knowing waiver of those rights. The Union states accurately in its Opposition that those agreements were executed prior to the Supreme Court issuing its ruling in *Janus*. *See* Teamsters Opposition at 2-3. Because the right not to pay fees or dues to a union had not been announced by the Supreme Court, Plaintiffs could not have known that they were waiving that constitutional right; therefore, Plaintiffs could not have "freely given" their "affirmative consent" as required by the *Janus* decision. 138 S. Ct. at 2486. The Union fails to recognize this flaw in the formation of the contracts on which it relies, and it erroneously claims that such agreements were "freely entered into." Teamsters Opposition at 11. A waiver of a constitutional right cannot be can be "freely entered into" if the parties to the agreement are not provided with the material fact of the very existence of the right. Any such waiver must be freely given in a manner that is voluntary, knowing, and intelligently made. *D. H. Overmyer Co. v. Frick Co*., 405 U.S. 174, 185-86 (1972). Because they were not freely entered into, the agreements should not act as a barrier to this Court enjoining the unconstitutional deduction of union dues from nonmembers.

The lack of full information is what distinguishes the promise made in *Cohen v. Cowles Media Co.,* 501 U.S. 663, 672 (1991), which is cited by the Union as a reason not to grant an injunction. In *Cohen,* a newspaper agreed not to reveal a source, and having made that agreement, could not rely on the First Amendment to protect its publication of the information it had agreed not to reveal. *Cohen* amounts to a statement that one can waive a constitutional right, which Plaintiffs acknowledge is consistent with *Janus*. But the First Amendment rights of newspapers were long established when *Cohen* was decided in 1991. *See, e.g., New York Times Co. v. United States,* 403 U.S. 713 (1971). There was no intervening change in the law that recognized a new right of newspapers

between when the promise was made and when the case was decided. In this case, however, an intervening Supreme Court decision has clarified that Plaintiffs signed their authorizations subject to an unconstitutional choice between paying dues to the Union or paying agency fees to the Union. Because this choice is now known to have been unconstitutional, the Court should enjoin the act of deducting dues that relies upon it.

**II. Plaintiffs are suffering irreparable injury from continuing to have union dues taken from their paychecks.**

Plaintiffs are pleased to learn that their fees are being kept in escrow to ensure they can be properly returned once they are successful in this motion. *See* Teamsters Opposition at 4. But as explained in the preliminary injunction motion, "[E]ven a full refund would not undo the violation of First Amendment rights. . . . [T]he First Amendment does not permit a union to extract a loan from unwilling nonmembers even if the money is later paid back in full." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 317 (2012). Currently, Plaintiffs are being compelled to make monthly loans to the Union against their will. The continued deduction of union dues constitutes an irreparable injury to Plaintiffs of several hundred dollars a year. The biweekly deductions are a tangible, present hardship on Plaintiffs that cannot be compensated merely by returning their money later. The immediate injury being suffered by Plaintiffs from the current lack of these funds is irreparable at a later date, regardless of whether they are being held in escrow. As the Supreme Court decreed even before *Janus*, holding dues deductions in escrow does not cure a deduction that was unconstitutional when it occurred. *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 310 (1986) ("[T]he Union's 100% escrow does not cure all of the problems in the original procedure.").

**III. The Regents do not have sovereign immunity from an injunction of this Court.**

In the Regent's Opposition to the motion, they contend that they are immune from

suit under the Eleventh Amendment. They are confusing the entity of the University of California, which does maintain limited sovereign immunity in cases seeking damages, with the Regents, who are officers of the state subject to equitable remedies under *Ex parte Young*, 209 U.S. 123 (1908). The cases cited by the Regents from the Ninth Circuit Court of Appeals do not stand for what they claim. All are either cases in which the Plaintiff asked for some form of damages or cases against universities rather than the Regents as officers. *See Armstrong v. Meyers*, 964 F.2d 948, 949 (9th Cir. 1992) ("Armstrong brought suit under 42 U.S.C. § 1983, alleging he had been deprived of property without due process of law."); *Jackson v. Hayakawa*, 682 F.2d 1344, 1349 (9th Cir. 1982) ("The first question under the Eleventh Amendment is whether San Francisco State College was an arm of the state."); *BV Eng'g v. Univ. of Cal.*, 858 F.2d 1394, 1395 (9th Cir. 1988) ("We review only the legal question whether the eleventh amendment immunizes the University of California from suit."); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("[W]e affirm the district court's holding that the University is immune from suit"). None of these cases stand for the proposition that the Regents are not the appropriate parties under *Ex Parte Young*. Indeed, the Regents have served as the appropriate state actors for suit in circumstances like these for decades. *See, e.g., Regents of the University of California v. Bakke*, 438 U.S. 265 (1978).

The Regents also claim that they should receive immunity because they are acting in accordance with state law. Plaintiffs concede they are acting pursuant to state law. The question this case raises is whether, in following state law, they are violating the First Amendment to the U.S. Constitution. While the Regents, in their Opposition, initially disclaim responsibility, stating "this case presents a disputed issue specifically between Plaintiffs and the Union," Regents Opposition at 1, they go on to admit that they are the ones who will ultimately have to take action to stop the dues deduction. *Id.* at 6 ("[S]hould the Court ultimately issue an Order enjoining the Union from collecting membership dues from Plaintiffs, the University would be required by law to comply with the termination of any dues deductions."). Because the Regents are the state officers who have the ability to

order a stop to Plaintiffs' dues deductions, they are a necessary party, and the Court should issue an injunction for them to do so.

Finally, the Regents contend that this dispute is really a matter for the California labor regulator, the Public Employment Relations Board ("PERB"). *Id.* at 7. On the contrary, Plaintiffs are not presenting a disputed question of California labor law. Indeed, all parties agree in this case about what the California labor statutes require. Instead, this a dispute regarding whether those statutes survive the requirements of the First Amendment. That is a question properly brought, not before the labor board, but before this Court. If the Court agrees with Plaintiffs that a First Amendment violation has occurred, it is the Regents, not PERB, who are the proper parties for injunctive relief.

### IV. The state Attorney General defending a state statute constitutes state action under 42 U.S.C § 1983.

The Attorney General, in his Opposition, asserts that actions taken by state officers pursuant to a state statute do not constitute state action. Attorney General Opposition at 7 (Dkt. 41). This contention is curious because state Regents using the state payroll system to deduct dues from state-issued paychecks of state employees is the very definition of state action, required for a suit brought under 42 U.S.C. § 1983. In fact, the Supreme Court has gone much further to impart state action to unions themselves in cases of unconstitutional dues deductions. This Court need look no further than the *Janus* decision itself, in which the union's deduction of agency fees constituted state action. An even more extreme example is the case of *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982), which held that a private debt collector's actions constituted state action under § 1983. In that case, the Court also struck down an unconstitutional state statute because the private parties "invok[ed] the aid of state officials to take advantage of state-created attachment procedures." *Id*. at 934. In the present case, the Union also has invoked the aid of state officials, the Regents, to take advantage of a state labor statutory scheme that the Attorney General is charged with upholding. State actors carrying out these state statutes constitutes

state action under § 1983, and the question of whether such action is constitutional or should be enjoined is properly before this Court.

For the reasons stated above, the Court should grant Plaintiffs' Motion for Preliminary Injunction.

Dated: May 29, 2019

                    Respectfully submitted,

/s/ Mark W. Bucher
Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

/s/ Brian K. Kelsey
Brian K. Kelsey (*Pro Hac Vice*)
bkelsey@libertyjusticecenter.org
Reilly Stephens (*Pro Hac Vice*)
rstephens@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiff*