XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
MAUREEN C. ONYEAGBAKO
Deputy Attorney General
State Bar No. 238419
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7324
  Fax: (916) 324-8835
  E-mail: Maureen.Onyeagbako@doj.ca.gov
*Attorneys for Xavier Becerra, in his official*
*capacity as Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CARA O'CALLAGHAN and JENEE MISRAJE,**<br><br>Plaintiffs,<br><br>v.<br><br>**REGENTS OF THE UNIVERSITY OF CALIFORNIA; TEAMSTERS LOCAL 2010; and XAVIER BECERRA, in his Official Capacity as Attorney General of California,**<br><br>Defendants. | 2:19-cv-02289-JLS-DFM<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANT XAVIER BECERRA; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          September 9, 2019<br>Time:          1:30 pm<br>Courtroom:     10C<br>Judge:         Hon. James V. Selna<br>Trial Date:    NA<br>Action Filed: March 27, 2019 |

# TABLE OF CONTENTS

**Page**

NOTICE....................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.........................2

INTRODUCTION ....................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND ...........................3

    I.     Plaintiffs and the Teamsters Union................................3

    II.    California's Collective Bargaining System .....................4

    III.   Procedural History and Claims for Relief.......................6

LEGAL STANDARD ...............................................................................6

ARGUMENT.............................................................................................7

    I.     Plaintiffs Cannot State a Constitutional Challenge to the Dues-Maintenance Statutes Because Their Purported Harms Do Not Arise From Any State Action, But From Their Private Membership Agreement with the Union ...........................7

        A.    The Post-*Janus* Dues Deduction Was Not Based on a Right or Privilege Created by the State .......................9

        B.    The Teamsters Union Is Not a State Actor.............10

            1.    The "Public Function" Test............................11

            2.    The "Joint Action" Test...................................11

            3.    The "State Compulsion" Test..........................12

            4.    The "Governmental Nexus" Test.....................13

    II.    Plaintiffs' Constitutional Challenge to the State's Exclusive Representation Laws Fails as a Matter of Law.................14

        A.    The Supreme Court and Ninth Circuit Have Repeatedly Recognized that Exclusive Representation Is Constitutional Because It Serves a Compelling State Interest ..........................................................................14

        B.    Plaintiffs Misapply *Janus*, Which Did Not Disturb Exclusive-Representation Arrangements .................16

        C.    State Law Does Not Compel Association with the Union.......16

CONCLUSION.........................................................................................18

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abood v. Bd. of Educ.*
  431 U.S. 209 (1977) ..................................................................... 14

*Adams v. Johnson*
  355 F.3d 1179 (9th Cir. 2004) .................................................... 6, 7

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*
  526 U.S. 40 (1999) ..................................................................... 9, 10

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ......................................................................... 7

*Babb v. Cal. Teachers Ass'n*
  ___ F. Supp. 3d ___ (C.D. Cal. 2019) ........................................ 16

*Bain v. Cal. Teacher Ass'n*
  156 F. Supp. 3d 1142 (C.D. Cal. 2015) ........................................ 7

*Bain v. Cal. Teachers Ass'n*
  No. 2:15-cv-02465-SVW-AJW, 2016 WL 6804921
  (C.D. Cal. May 2, 2016) .......................................................... 10, 13

*Belgau v. Inslee*
  359 F. Supp. 3d 1000 (W.D. Wash. Feb. 15, 2019) ...................... 9

*Belgau v. Inslee*
  No. 18-5620 RJB, 2019 WL 652362 (W.D. Wash. Oct. 11, 2018) .................. 10

*Bell Atl. v. Twombly*
  550 U.S. 544 (2007) ......................................................................... 7

*Blum v. Yaretsky*
  457 U.S. 991 (1982) ............................................................. 8, 10, 12

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*
  590 F.3d 806 (9th Cir. 2010) ................................................ 7, 9, 12

*Cervantes v. Countrywide Home Loans, Inc.*
  656 F.3d 1034 (9th Cir. 2011) ........................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Cobb v. Saturn Land Co., Inc.*
   966 F.2d 1334 (10th Cir. 1992) ........................................................... 10

*Delgado v. Smith*
   861 F.2d 1489 (11th Cir. 1988) ........................................................... 10

*Evans v. Newton*
   382 U.S. 296 (1966) ............................................................................ 11

*Florer v. Congregation Pidyon Shevuyim, N.A.*
   639 F.3d 916 (9th Cir. 2011) .............................................................. 11

*Galbraith v. Cnty. of Santa Clara*
   307 F.3d 1119 (9th Cir. 2002) .............................................................. 7

*Hallinan v. Fraternal Order of Police of Chicago Lodge*
   *No.* 7, 570 F.3d 811 (7th Cir. 2009) .................................................. 13

*Janus v. American Federation of State, County, and Municipal*
   *Employees Council 31*
   138 S. Ct. 2448 (2018) .................................................................*passim*

*Kidwell v. Transp. Commc'ns Int'l Union*
   946 F.2d 283 (4th Cir. 1991) .............................................................. 13

*Knievel v. ESPN*
   393 F.3d 1068 (9th Cir. 2005) .............................................................. 6

*Lee v. City of Los Angeles*
   250 F.3d 668 (9th Cir. 2001) ................................................................ 7

*Lee v. Katz*
   276 F.3d 550 (9th Cir. 2002) .............................................................. 11

*Lopez v. Dep't of Health Servs.*
   939 F.2d 881 (9th Cir. 1991) .............................................................. 13

*Lugar v. Edmonson Oil Co., Inc.*
   457 U.S. 922 (1982) ......................................................................... 7, 8

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Manhattan Cmty. Access Corp. v. Halleck*
139 S. Ct. 1921 (2019) ....................................................... 6, 10, 11, 13

*Mentele v. Inslee*
916 F.3d 783 (9th Cir. 2019) ................................................. 14, 16, 17

*Minnesota State Board v. Knight*
465 U.S. 271 (1984) ....................................................... 14, 15, 16, 17

*Naoko Ohno v. Yuko Yatsuma*
723 F.3d 984 (9th Cir. 2013) ..................................................... *passim*

*Padilla v. Lever*
463 F.3d 1046 (9th Cir. 2006) ............................................................ 10

*Rendell-Baker v. Kohn*
457 U.S. 830 (1982) ...................................................................... 11

**STATUTES**

42 United States Code § 1983 ........................................................ 2, 7

Government Code
§ 1157.12 ........................................................................ 1, 5, 6
§ 1157.12(a) ......................................................................... 5
§ 1157.12(b) ..................................................................... 5, 12
§ 3513(i) ...................................................................... 1, 6, 12
§ 3515 ............................................................................ 1, 6
§ 3515.5 .......................................................................... 1, 6
§ 3570 ........................................................................... 6, 16
§ 3571.1(e) .................................................................. 6, 16, 17
§ 3574 .......................................................................... 6, 17
§ 3578 ...................................................................... 6, 16, 17
§ 3583 ............................................................................ 1, 6

# TABLE OF AUTHORITIES
### (continued)

**Page**

**COURT RULES**

Central District of California Local Rule
    Rule 7-3 .................................................................................................... 1

Federal Rules of Civil Procedure
    Rule 12(b)(6) ..................................................................................... 1, 6, 7

**OTHER AUTHORITIES**

Cal. Senate Com. on Budget and Fiscal Review, 3d reading analysis of
    Sen. Bill No. 866, at p. 3, as amended June 13, 2018,
    http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?
    bill_id=201720180SB866#.................................................................. 5

California Department of Human Resources, Bargaining/Contracts,
    http://www.calhr.ca.gov/state-hr-professionals/Pages/bargaining-
    contracts.aspx .................................................................................... 5

California Legislative Analyst's Office—Bargaining Unit Profiles,
    https://lao.ca.gov/stateworkforce/BargainingUnits?unit=0................................ 4

Senate Bill No. 866 (Cal. Stat. 2018, ch. 53) ............................................ 5

United States Census—Number of Employees at the State and Local
    Level by State: 2012,
    https://www2.census.gov/govs/apes/2012_summary_ report.pdf........................ 4

**<u>NOTICE</u>**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 9, 2019, or as soon thereafter as the matter may be heard before the Honorable James V. Selna in Courtroom 10C of the United States District Court for the Central District of California, located at the Ronald Reagan Federal Building & United States Courthouse, 411 West 4th Street, Santa Ana, CA 92701, Defendant Xavier Becerra, in his official capacity as Attorney General of the State of California, will and hereby does move this Court for an order dismissing the First Amended Complaint as to Attorney General Becerra, without leave to amend, under Federal Rule of Civil Procedure 12(b)(6).

This motion to dismiss is brought on the grounds that (1) Plaintiffs cannot state a constitutional challenge to Government Code sections 1157.12, 3513(i), 3515, 3515.5, or 3583, because the challenged conduct—continued deduction of union dues—is not a state action, and (2) Plaintiffs' constitutional challenge to California's exclusive-representation laws is foreclosed by Supreme Court and Ninth Circuit authorities upholding the constitutionality of such arrangements.

Defendant Becerra makes this motion to dismiss following the conference of counsel pursuant to L.R. 7-3, which took place on May 17, 2019, and June 26, 2019.

Defendant Becerra bases the motion to dismiss on this notice, the supporting memorandum of points and authorities, the pleadings, records, and files in this action, and such other matters as may properly come before the Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Xavier Becerra moves to dismiss the First Amended Complaint for the same reasons addressed in his opposition to Plaintiffs' motion for preliminary injunction (ECF No. 41, May 20, 2019), which is incorporated here by reference. This case follows *Janus v. American Federation of State, County, and Municipal Employees Council 31*, 138 S. Ct. 2448 (2018), and Plaintiffs O'Callaghan's and Misraje's desire to resign from the union and immediately stop the continued payment of union dues required by the terms of their union membership agreements.

But Plaintiffs have not sufficiently stated claims for relief under 42 U.S.C. § 1983, because their constitutional challenges to the state's dues-maintenance and exclusive-representation statutes fail as a matter of law.  With respect to the dues-maintenance provisions, Plaintiffs' alleged injuries do not arise from any state action but rather from their private agreement with the Teamsters Local 2010 union. Contrary to Plaintiffs' contention, *Janus*'s holding regarding fair-share agency fees of *non-members* does not permit union members, which is what Plaintiffs were at the time of the *Janus* decision, to renege on their contractual obligation to pay union dues for a specified period of time after resigning membership.

Nor are Plaintiffs entitled to relief as a matter of law on their challenge to state laws addressing exclusive-representation arrangements.  *Janus* expressly did not disturb exclusive-representation arrangements, and multiple courts have recognized that exclusive representation serves a compelling state interest.  The state laws at issue here do not compel Plaintiffs' association with the union.  Instead, they simply recognize the right of public employees to enter into private contracts with unions and to negotiate collectively on the terms and conditions of public employment.

1       For these reasons, Plaintiffs cannot state a claim for relief regarding the

2   constitutionality of the state laws they challenge, and Attorney General Becerra

3   respectfully requests that this Court dismiss the claims without leave to amend.

4   <center>**FACTUAL AND PROCEDURAL BACKGROUND**</center>

5   **I.   PLAINTIFFS AND THE TEAMSTERS UNION**

6       Plaintiff O'Callaghan currently works as a finance manager at the University

7   of California, Santa Barbara (UCSB).  (First Am. Compl. ¶ 7, June 14, 2019, ECF

8   No. 42.)[1]  She has continuously worked for UCSB since August 2009, and

9   previously worked for UCSB from 2000 to 2004.  (*Id.* ¶ 14.)  "When O'Callaghan

10  began her latest stint of employment at UCSB" in August 2009, she paid only fair-

11  share fees until joining the Teamsters union in May 2018.[2]  (*Id.* ¶¶ 14–16.)

12      On July 25, 2018, after learning about the *Janus* decision, O'Callaghan sent

13  the Teamsters a letter resigning from the union, as well as a written request to

14  UCSB requesting that it stop deducting union dues from her paycheck.  (First Am.

15  Compl. ¶ 17.)  The Teamsters responded by letter, informing O'Callaghan that she

16  was free to resign her membership at any time but that payroll deductions would

17  continue unless and until she gave notice pursuant to the terms of the collective

18  bargaining agreement between the Teamsters and UCSB.[3]  (*Id.* ¶ 18.)  Those terms

19  required that the resignation request be sent during the thirty days prior to

20  expiration of the collective-bargaining agreement on March 31, 2022.  (*Id.* ¶ 19.)

21  UCSB directed O'Callaghan's request to the union, which confirmed that the dues

22  deductions should continue.  (*Id.* ¶¶ 20–21.)  The Complaint estimates deductions

23      [1] Attorney General Becerra has attached a copy of the First Amended

24  Complaint as Exhibit A, in compliance with the Court's standing order.  (Initial
    Order Following Filing of Complaint Assigned to Judge Selna 6, May 1, 2019, ECF

25  No. 29.)

        [2] It is not clear from the Complaint whether O'Callaghan was a union
26  member while working for UCSB from 2000 to 2004.  (*See* First Am. Compl. ¶ 14.)

27      [3] Although the First Amended Complaint references a bargaining agreement
    between the Union and UCSB (First Am. Compl. ¶ 18), Defendant Becerra
    understands this to mean the bargaining agreement between the Union and the
28  University of California.

<center>3</center>

1   of approximately $41 per month in union dues from O'Callaghan's paycheck.  (*Id.*

2   ¶ 24.)

3         Plaintiff Misraje has been employed by the University of California, Los

4   Angeles (UCLA) since May 2015.  (First Am. Compl. ¶ 25.)  She joined the

5   Teamsters and authorized membership dues deductions in July 2015.  (*Id.* ¶ 26.)

6   On August 8, 2018, Misraje requested to withdraw her union membership.  (*Id.*

7   ¶ 27.)  The union advised Misraje that she "would be dropped as a full member of

8   the Union, but she could not end the deduction of union dues from her paycheck" at

9   that time.  (*Id.* ¶ 28.)  Misraje followed up with additional written requests to the

10  union and to UCLA, requesting immediate termination of the dues deductions.  (*Id.*

11  ¶¶ 29, 32, 34, 36, 37.)  Neither entity stopped the deductions.  (*Id.* ¶¶ 30, 31, 33, 35,

12  38, 39.)  Under the terms of Misraje's union application, she must send the notice to

13  stop dues deductions "'at least sixty (60) days, but not more than seventy-five (75)

14  days' before the anniversary date of the signed agreement."  (*Id.* ¶ 40.)  Misraje

15  estimates deductions of approximately $53 per month from her paycheck for union

16  dues.  (*Id.* ¶ 41.)

17  **II.   CALIFORNIA'S COLLECTIVE BARGAINING SYSTEM**

18        There are more than two million state and local public employees in

19  California, most of whom are represented by labor unions or other labor

20  organizations.[4]  The many different agencies and entities of the State of California

21  employ over 200,000 people.[5]  Over 80 percent of those employees, comprising 21

22  different bargaining units, are represented by labor unions.[6]  The state's collective

23  bargaining system provides a regulated mechanism by which unions representing

24          [4] *See* United States Census—Number of Employees at the State and Local

25  Level by State: 2012, https://www2.census.gov/govs/apes/2012_summary_
    report.pdf (as of June 28, 2019).

26          [5] *See* California Legislative Analyst's Office—Bargaining Unit Profiles,

27  https://lao.ca.gov/stateworkforce/BargainingUnits?unit=0 (as of June 28, 2019).

            [6] See *id.*

28

rank-and-file employees and public employers can negotiate terms and conditions of employment—including wages, hours, and benefits—that can be applied uniformly across a broad and diverse workforce.[7]

To facilitate administration of these extensive collective bargaining systems, California has enacted numerous laws.  As relevant here, on June 27, 2018, the California Legislature enacted Senate Bill No. 866 (Cal. Stat. 2018, ch. 53), which added section 1157.12 to the California Government Code.  Section 1157.12 specifies procedures for public employees to adjust or stop payroll deductions for union membership.  Under these procedures, "public employers other than the state" must direct "employee requests to cancel or change authorizations for employee organizations to the employee organization" itself.  *See* Cal. Gov't Code § 1157.12(b).[8]  In turn, these public employers must rely on certifications provided by employee organizations about individual employee authorizations of payroll deductions.  *See* § 1157.12(a); *see also id.* (requiring employee organizations to indemnify the public employer for any claims made by employees for payroll deductions made in reliance on an employee organization's certification).  By relying on unions' administration of their own membership records to determine employees' dues commitments, the Legislature sought to codify existing practices and "[clarify] the administration of payroll deductions and salary deductions by public employers or the Controller for these purposes."[9]

---

[7] *See* California Department of Human Resources, Bargaining/Contracts, http://www.calhr.ca.gov/state-hr-professionals/Pages/bargaining-contracts.aspx (as of June 28, 2019).

[8] Unless otherwise noted, all further statutory references are to the California Government Code.

[9] *See* Cal. Senate Com. on Budget and Fiscal Review, 3d reading analysis of Sen. Bill No. 866, at p. 3, as amended June 13, 2018, http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB866# (as of June 28, 2019).

### III.  PROCEDURAL HISTORY AND CLAIMS FOR RELIEF

On March 27, 2019, Plaintiffs filed their Complaint for declaratory relief, injunctive relief, and damages based on alleged First Amendment violations. (Compl., Mar. 27, 2019, ECF No. 1.)  Following motions to dismiss by Attorney General Becerra, Teamsters Local 2010, and the Regents of the University of California, Plaintiffs filed the First Amended Complaint in lieu of an opposition to the motions.  The First Amended Complaint substituted Janet Napolitano, in her official capacity as President of the University of California system, in place of the Regents.  (First Am. Compl. ¶¶ 9, 44.)

Plaintiffs seek the immediate cessation of union dues deductions following their resignations.  (First Am. Compl., Prayer for Relief.)  To accomplish this, Plaintiffs seek an order enjoining Attorney General Becerra from defending (1) Government Code sections 1157.12, 3513(i), 3515, 3515.5, 3583, and all other provisions of California law that require Plaintiffs to wait until a specified window of time to stop the payroll deductions without their affirmative consent (collectively, the dues-maintenance statutes), and (2) Government Code sections 3570, 3571.1(e), 3574, 3578), and all other provisions of California law that provide for exclusive representation of public employees who do not affirmatively consent to union membership (collectively, the exclusive-representation statutes). (First Am. Compl., Prayer for Relief.)

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party.  *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  The court need not accept conclusory allegations and unwarranted inferences.  *Adams v. Johnson*, 355

F.3d 1179, 1183 (9th Cir. 2004) (citation omitted).  The court may also disregard factual allegations that are contradicted by matters or documents necessarily relied on by the complaint whose authenticity no party questions.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

To survive dismissal under Rule 12(b)(6), a complaint must be plausible on its face, meaning that it provides sufficient factual detail that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

## ARGUMENT

### I. PLAINTIFFS CANNOT STATE A CONSTITUTIONAL CHALLENGE TO THE DUES-MAINTENANCE STATUTES BECAUSE THEIR PURPORTED HARMS DO NOT ARISE FROM ANY STATE ACTION, BUT FROM THEIR PRIVATE MEMBERSHIP AGREEMENT WITH THE UNION

"To state a claim under § 1983, a plaintiff must show that the allegedly unconstitutional conduct is fairly attributable to the State."  *Bain v. Cal. Teacher Ass'n*, 156 F. Supp. 3d 1142, 1149 (C.D. Cal. 2015) (citing *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)).  "At bottom, the state action requirement serves to 'avoid[ ] imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'" *Naoko Ohno v. Yuko Yatsuma*, 723 F.3d 984, 994 (9th Cir. 2013) (quoting *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 936 (1982)).  Plaintiffs' constitutional challenges to the dues-maintenance statutes fail as a matter of law because their claimed injuries arise not from the statues, but from their voluntary decisions to join the union and the terms of their union membership agreements.  (First Am. Compl. ¶¶ 24, 41 (alleging that Napolitano continues to deduct union dues from Plaintiffs'

1    paychecks despite their "repeated requests that the deductions be stopped"); 47 ("In

2    acting in concert with Napolitano, the Union . . . is utilizing the state payroll system

3    to exact its dues and is acting pursuant to an exclusive collective bargaining

4    agreement negotiated with a state entity.").)

5        The Ninth Circuit has previously considered the level of governmental

6    involvement needed to elevate private action to the level of state action in order to

7    trigger constitutional scrutiny.  *Naoko Ohno* addressed a district court's recognition

8    and enforcement of a tort judgment issued by a Japanese court.  *Naoko Ohno*, 723

9    F.3d at 986–87, 989–90.  On appeal, the defendant argued that the district court's

10   recognition and enforcement of the foreign judgment violated the First

11   Amendment's Free Exercise Clause.  *Id.* at 987.  In analyzing whether the district

12   court's action constituted a state action, the Ninth Circuit determined that

13   constitutional scrutiny is only triggered "when it can be said that the State is

14   *responsible* for the specific conduct of which the plaintiff complains."  *Id.* at 994

15   (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (emphasis in original).  The

16   court applied a two-prong test to determine whether governmental involvement in

17   private action had sufficient impact to make the government responsible for the

18   alleged harm:

19           The first prong asks whether the claimed constitutional deprivation
             resulted from "the exercise of some right or privilege created by the
20           State or by a rule of conduct imposed by the [S]tate or by a person
             for whom the State is responsible."  [Citation.]  The second prong
21           determines whether the party charged with the deprivation could be
             described in all fairness as a state actor.
22

23

24   *Id.* at 995 (quoting *Lugar*, 457 U.S. at 937).  Ultimately, the Ninth Circuit held that

25   the district court decision did not constitute a state action.  *Id.* at 987.

26       Here, Plaintiffs ask this Court to enjoin enforcement of the dues-maintenance

27   statutes because they allegedly violate Plaintiffs' First Amendment rights.  But the

28   actual constitutional injuries Plaintiffs allege arise exclusively from the union's

1    decision to continue to deduct dues from their paychecks.  This injury is not fairly

2    attributable to the dues-maintenance statutes, which merely require that public

3    employers direct requests to change payroll deductions to the union, and to rely on

4    information provided by the union regarding whether deductions were properly

5    canceled or changed, or to any other state action.

6    **A.    The Post-*Janus* Dues Deduction Was Not Based on a Right or**
     **Privilege Created by the State**
7

8        The dues deductions at issue here did not result from the exercise of some

9    right or privilege created by the state, a rule of conduct imposed by the state, or by a

10   person for whom the state is responsible.  Rather, Plaintiffs' ability to revoke their

11   dues authorizations is determined exclusively by the terms of their membership

12   agreements, and Plaintiffs have not alleged that the state took part in the formation

13   or execution of those agreements.  (*See* First Am. Compl. ¶¶ 59–64, 83–87.)  On

14   this basis alone, Plaintiffs' claims fail the first prong of the "state action" test.

15       The applicable laws here simply recognize that employees and unions *may*

16   enter into dues-maintenance arrangements.  Such acknowledgement does not rise to

17   the level of state action.  *See, e.g., Caviness*, 590 F.3d at 817 ("[A]ction taken by

18   private entities with the mere approval or acquiescence of the State is not state

19   action.") (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)

20   (*Sullivan*)); *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1014 (W.D. Wash.

21   Feb. 15, 2019) (quoting same), appeal docketed No. 19-35137 (9th Cir. Feb. 20,

22   2019) (citing same).  Likewise, the collective bargaining agreement's mere

23   reference to the union membership agreement's dues-maintenance provisions (First

24   Am. Compl. ¶ 19) does not amount to state action.  Plaintiffs do not—and cannot

25   allege—that the state required them to join the union, or that it required the union to

26   include a dues-maintenance provision in the membership agreement.  Because the

27   state is not "responsible for the specific conduct of which the plaintiff complains,"

28   their First Amendment challenge to the continued payroll deductions fails as a

1  matter of law. *Naoko*, 723 F.3d at 994 (quoting *Blum*, 457 U.S. at 1004) (emphasis
2  in original).

3      Finally, the state's ministerial function of continuing to process Plaintiffs'
4  dues deductions does not amount to state action implicating constitutional
5  protections. *See Padilla v. Lever*, 463 F.3d 1046, 1062 (9th Cir. 2006) (citing
6  *Delgado v. Smith*, 861 F.2d 1489, 1495–96 (11th Cir. 1988) for the proposition that
7  a state's ministerial approval of a voter initiative did not constitute state action); *see*
8  *also Cobb v. Saturn Land Co., Inc.*, 966 F.2d 1334, 1337 (10th Cir. 1992)
9  ("[A]ctions of a county clerk, who merely accepted and recorded the required lien
10 materials prepared by Defendant and then issued filing notices to Plaintiff," were
11 not state actions sufficient to invoke constitutional protection); *Belgau v. Inslee*,
12 No. 18-5620 RJB, 2019 WL 652362, at *8 (W.D. Wash. Oct. 11, 2018) ("The State
13 Defendants' obligation to deduct fees in accordance with the authorization
14 'agreements does not transform decisions about membership requirements . . . into
15 state action.'") (quoting *Bain v. Cal. Teachers Ass'n*, No. 2:15-cv-02465-SVW-
16 AJW, 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016)).

17     For these reasons, the union's enforcement of the membership agreement's
18 dues-maintenance terms—the sole cause of Plaintiffs' alleged injury—does not
19 satisfy the first prong of the "state action" test.

20     **B.    The Teamsters Union Is Not a State Actor**
21     Even if Plaintiffs could satisfy the first prong of the state action test, their
22 constitutional challenge fails at the second prong because the Teamsters is not a
23 state actor.  Courts have articulated four tests to determine whether a non-
24 governmental entity's actions amount to state action:  (a) the public function test;
25 (b) the joint action test; (c) the state compulsion test; and (d) the governmental
26 nexus test. *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1928; *Sullivan*, 526 U.S.
27 at 52–58; *Naoko Ohno*, 723 F.3d at 995 (internal citations omitted).  As discussed

28

1    below, the continued payroll deductions under the terms of Plaintiffs' membership

2    agreements do not satisfy any of the tests to establish the union as a state actor.

3            **1.    The "Public Function" Test**

4            "Under the public function test, 'when private individuals or groups are

5    endowed by the State with powers or functions governmental in nature, they

6    become agencies or instrumentalities of the State and subject to its constitutional

7    limitations.'"  *Lee v. Katz*, 276 F.3d 550, 554–55 (9th Cir. 2002) (quoting *Evans v.*

8    *Newton*, 382 U.S. 296, 299 (1966)).  "To satisfy the public function test, the

9    function at issue must be both traditionally and exclusively governmental."  *Id.*

10   at 555 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)).  "'[V]ery few'

11   functions fall into that category."  *Manhattan Cmty. Access Corp.*, 139 S. Ct.

12   at 1929.

13           As previously discussed, the state has not endowed the Teamsters "with

14   powers or functions governmental in nature."  *Florer v. Congregation Pidyon*

15   *Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011).  And the "relevant function" in

16   this case—the imposition of a dues requirement for employees who choose union

17   membership, and the enforcement of contract terms governing the termination of

18   that requirement—"has not traditionally and exclusively been performed by

19   government."  *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1929 (collecting cases

20   rejecting "public function" challenges to private conduct); *see also Lee*, 276 F.3d

21   at 555.  Rather, they are routine matters of private contract that arise out of union

22   membership agreements.

23           **2.    The "Joint Action" Test**

24           A "'[j]oint action' exists where the government affirms, authorizes,

25   encourages, or facilities unconstitutional conduct through its involvement with a

26   private party."  *Naoko Ohno*, 723 F.3d at 996.  Here, Plaintiffs voluntarily

27   authorized the deduction of union dues from their paychecks.  (First Am. Compl.

28   ¶¶ 16, 26.)  The state did not affirm, authorize, encourage, or facilitate the contents

of the membership agreement.  And its role in facilitating the deductions does not

amount to "significant assistance" in the negotiation of the membership agreement

or the union's enforcement of it.  *See Naoko Ohno*, 723 F.3d at 996 ("[T]he district

court's enforcement order facilitates [plaintiff's] efforts to recover . . . the sum of

money awarded by the Japanese court.  But . . . its implementation of the

procedures . . . cannot be said to provide 'significant assistance' to the underlying

acts that . . . constituted the core violation[.]").  Similarly, the state's recognition of

a union as the exclusive bargaining representative does not constitute "significant

assistance" because that status is based on the majority vote of public employees

within a bargaining unit, and not on any action by the state.

### 3.    The "State Compulsion" Test

Under the "state compulsion" test, "[a] state may be responsible for a private

entity's actions if 'it has exercised coercive power or has provided such significant

encouragement, either overt or covert, that the choice must in law be deemed to be

that of the State.'"  *Caviness*, 590 F.3d at 816 (quoting *Blum*, 457 U.S. at 1004).

Here, the terms governing revocation of Plaintiffs' dues deduction are matters of

contract between Plaintiffs and the union.  The state did not co-sign the Teamsters'

membership agreement, and Plaintiffs have not alleged that the state exercised

coercive power over the union or played any role whatsoever in the creation or

execution of the terms for dues deduction.  To the contrary, state law requires

public employers to keep at arm's length from any changes to membership dues

deductions, by "direct[ing] employee requests to cancel or change deductions for

employee organizations to the employee organization," (§ 1157.12(b)), and

respecting the right of state employees to form, join, and participate in activities of

employee organizations, and entering into maintenance-of-membership provisions,

(§ 3513(i)).

### 4.    The "Governmental Nexus" Test

"Under the governmental nexus test, a private party acts under color of state law if 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Naoko Ohno*, 723 F.3d at 995 n. 13 (quoting *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (internal citations omitted)).  Here, the Teamsters' enforcement of Plaintiffs' membership agreements cannot be treated as an action of the state itself.  To the contrary, the union's decision to include the dues-maintenance provision in its membership agreements, and to enforce such provisions against Plaintiffs was made entirely independent of the state.  "Courts have regularly rejected attempts to find state action in the internal decisions of unions even when they are given exclusive bargaining authority by state law." *Bain*, 2016 WL 6804921, at *7; *cf. Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1931–32 (holding that a state's extensive regulation of a private utility does not render the utility a state actor regardless of whether the state had authorized the utility to provide service to the community, or whether the utility was the only entity providing such service).

Likewise, the "government's ministerial obligation to deduct dues" for union members "does not transform decisions about membership requirements into state actions." *Bain*, 2016 WL 6804921, at *7 (citing *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 817 (7th Cir. 2009)); *accord Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 298 (4th Cir. 1991) (the government cannot be held responsible for a union's membership criteria because the governmental authority conferred upon the union did not specifically authorize or require the action complained of).  State law does not prescribe any specific action that the Teamsters must (or should) take in either creating or enforcing a dues-deduction requirement against Plaintiffs.  Accordingly, the Teamster's

13

1 continued deduction of membership dues lacks the governmental nexus necessary

2 to invoke constitutional scrutiny.

3        Because Plaintiffs have not and cannot allege a state action or that the union is

4 a state actor, they cannot show government involvement sufficient in character and

5 impact that would make the state responsible for the alleged harm caused by the

6 union's continued deduction of membership dues from their paychecks.  *See Naoko*

7 *Ohno*, 723 F.3d at 937–42.  Thus, Plaintiffs' constitutional challenge to the dues-

8 maintenance statutes must be dismissed.

9  **II.   PLAINTIFFS' CONSTITUTIONAL CHALLENGE TO THE STATE'S**
10 **      EXCLUSIVE REPRESENTATION LAWS FAILS AS A MATTER OF LAW**

      **A.   The Supreme Court and Ninth Circuit Have Repeatedly**
11 **            Recognized that Exclusive Representation Is Constitutional**
12 **            Because It Serves a Compelling State Interest**

13        The Ninth Circuit recently rejected a claim by public employees that the

14 state's authorization of an exclusive bargaining arrangement violated First

15 Amendment rights to free speech and free association.  *Mentele v. Inslee*,

16 916 F.3d 783, 784 (9th Cir. 2019).  This decision directly applies here and

17 forecloses Plaintiffs' claim.

18        In *Mentele*, the Ninth Circuit held that "*Janus* did not revisit the longstanding

19 conclusion that labor peace is 'a compelling state interest[.]'"  *Mentele*, 916 F.3d at

20 787, 790 (citing *Janus*, 138 S. Ct. at 2465–66).  Indeed, the Ninth Circuit agreed

21 that the minimal impact on associational rights resulting from exclusive

22 representation is justified because "exclusive representation is necessary to

23 facilitate labor peace; without it, employers might face 'inter-union rivalries'

24 fostering 'dissension within the work force,' 'conflicting demands from different

25 unions,' and confusion from multiple agreements or employment conditions[.]"  *Id.*

26 at 790 (quoting *Abood v. Bd. of Educ.*, 431 U.S. 209, 220–21 (1977).

27        In reaching its decision, the *Mentele* court relied on *Minnesota State Board v.*

28 *Knight*, 465 U.S. 271 (1984) (*Knight*), in which the Supreme Court upheld the

constitutionality of exclusive-bargaining representation for public employees. *Knight* involved a First Amendment challenge by non-union member college faculty excluded from the "meet and confer" process under the state labor relations action.  The state labor relations act authorized employers to "meet and negotiate" with the exclusive representative over the terms of their employment, and authorized college faculty to "meet and confer" with employers on non-mandatory matters related to their employment but outside the scope of mandatory bargaining. *Knight*, 465 U.S. at 274.  If, however, the employees had selected an exclusive representative, only the exclusive representative could "meet and confer" with the employer about non-mandatory subjects.  *Id.* at 273–75, 279.  The Supreme Court summarily affirmed the "meet and negotiate" requirement, and held that the "meet and confer" process did not violate the First Amendment rights of non-union members.  *Id.* at 279, 288.  In so finding, the Court held that the "[plaintiffs] have no constitutional right to force the government to listen to their views.  They have no such right as members of the public, as government employees, or as instructors in an institution of higher education."  *Id.* at 283.  Thus, the government was "free to consult or not to consult whomever it pleases."  *Id.* at 285.

*Knight* also analyzed whether a state labor relations act violated employees' First Amendment rights to freedom of speech and association.  *Knight*, 465 U.S. at 288.  The Court concluded that the state had not restrained appellees' rights to speak on education-related issues or to associate or not associate with whomever they pleased, including the representative.  *Id.* at 272.  Nor had the state suppressed any of the plaintiffs' ideas.  *Id.* at 289.  And while the "meet and confer" process "amplifies" the exclusive representative's voice in the policy making process, that amplification did not impair individual instructors' constitutional freedom to speak and that "[a] person's right to speak is not infringed when government simply ignores that person while listening to others."  *Id.*

Here, *Mentele* and *Knight* foreclose Plaintiffs' claims that California's exclusive-representation statutes violate the First Amendment, which therefore fail as a matter of law.

**B.  Plaintiffs Misapply *Janus*, Which Did Not Disturb Exclusive-Representation Arrangements**

Contrary to Plaintiff's contention, (First Am. Compl. ¶ 70), *Janus* did not address the constitutionality of exclusive-representation arrangements, but rather only "the constitutionality of compelling full-fledged, non-union member state employees to pay agency fees." *Mentele*, 916 F.3d at 787 (citing *Janus*, 138 S. Ct. at 2459–60). Indeed, *Janus* "alluded to the propriety of exclusive representation arrangements," by concluding that except for their agency-fee arrangements, "[s]tates can keep their labor-relations systems exactly as they are," *id.* (quoting *Janus*, 138 S. Ct. at 2485 n.27). *See also Mentele*, 916 F.3d. at 788 (recognizing that *Janus* did not disturb exclusive-representation systems); *Babb v. Cal. Teachers Ass'n*, ___ F. Supp. 3d ___, 2019 WL 2022222, at *18 (C.D. Cal. 2019) (same). Accordingly, *Janus* has no bearing on the constitutionality of exclusive-representation arrangements, which the Supreme Court expressly upheld over 40 years ago.

**C.  State Law Does Not Compel Association with the Union**

Plaintiffs allege that the exclusive-representation statutes compel them to allow the union to speak on their behalf as a condition of their employment. (First Am. Compl. ¶¶ 76, 77.) No such mandate exists. Section 3570 requires higher education employers to meet and confer with a bargaining unit's chosen exclusive representative. § 3570.[10] Sections 3571.1(e) and 3578 impose a duty on the

---

[10] Under section 3570, "[h]igher education employers, or such representatives as they may designate, shall engage in meeting and conferring with the employee organization selected as exclusive representative of an appropriate unit on all matters within the scope of representation."

exclusive representative to represent all employees in the bargaining unit "fairly and impartially."[11]   Section 3574 requires higher education employers to recognize an exclusive representative unless, for example, the employer has reason to doubt that the union has majority support of its members, or another employee organization challenges the appropriateness of the exclusive representative.  But nothing in the exclusive-representation statutes compels *Plaintiffs* to associate with the Teamsters.  Rather, they impose a duty of fair representation on unions and require higher education employers to recognize the union designated by the majority of members in Plaintiffs' bargaining unit as the exclusive representative.  But as this case demonstrates, Plaintiffs are free to resign their union membership at any time.

While exclusive representation requires the state to treat the position of the exclusive representatives as a collective position of members in the bargaining unit, this in no way restrains Plaintiffs' "freedom to associate or not to associate with whom they please, including the exclusive representative." *Mentele*, 916 F.3d at 788–89 (quoting *Knight*, 465 U.S. at 288).  Thus, the laws recognizing exclusive representation place, at most, a minimal burden on associational rights in the collective bargaining context. *Janus*, 138 S. Ct. at 2478; *Mentele*, 465 U.S. at 788.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[11] Section 3571.1(e) makes it unlawful for a union to "[f]ail to represent fairly and impartially all the employees in the unit for which it is the exclusive representative."  § 3571.1(e).  Under section 3578, the exclusive representative "shall represent all employees in the unit, fairly and impartially. A breach of this duty [occurs] if the [union's] conduct in representation is arbitrary, discriminatory, or in bad faith."  § 3578.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, Plaintiffs fail to state First Amendment claims upon which relief can be granted with respect to the dues-maintenance statutes and exclusive-representation statutes.  Accordingly, Defendant Becerra respectfully requests that the Court grant this motion to dismiss without leave to amend.

Dated:  June 28, 2019                              Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

/S/ MAUREEN C. ONYEAGBAKO

MAUREEN C. ONYEAGBAKO
Deputy Attorney General
*Attorneys for Xavier Becerra,
in his official capacity as Attorney
General of California*

SA2019101538

# CERTIFICATE OF SERVICE

Case Name:   **O'Callaghan, Cara, et al. v.**          No.   **2:19-cv-02289-JLS-DFM**
             **Regents of the University of**
             **California, et al.**

I hereby certify that on <u>June 27, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT BY DEFENDANT XAVIER BECERRA; MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>June 27, 2019</u>, at Sacramento, California.

|                        |                          |
|------------------------|--------------------------|
| Eileen A. Ennis        | */s/ Eileen A. Ennis*    |
| Declarant              | Signature                |

SA2019101538
13870904.docx