JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   [IN CHAMBERS] Order Regarding Motions to Dismiss

**The Court, having been informed by the parties in this action that they submit on the Court's tentative ruling previously issued, hereby rules in accordance with the tentative ruling as follows:**

Defendants Janet Napolitano, in her official capacity as President of the University of California ("Napolitano"), Teamsters Local 2010 (the "Union") and Xavier Becerra, in his official capacity as Attorney General of California (the "Attorney General") (together—"Defendants") moved to dismiss Plaintiffs Cara O'Callaghan's ("O'Callaghan") and Jenée Misraje's ("Misraje") (together—"Plaintiffs") First Amended Complaint (FAC).  Mots., Dkt. Nos. 53-55.[1]  Plaintiffs opposed.  Opp'n, Dkt. Nos. 57-59.  Defendants replied.  Dkt. Nos. 60-62.

For the following reasons the Court **GRANTS** Defendants' motions.

**I. BACKGROUND**

O'Callaghan is the finance manager of the Sport Club program, employed by the University of California, Santa Barbara ("UCSB").  (FAC, Dkt. No. 52 ¶ 7.)

---

[1] Following motions to dismiss by Becerra, the Union, and the Regents of the University of California, Plaintiffs filed the FAC in lieu of an opposition to the motions. The FAC substituted Janet Napolitano, in her official capacity as President of the University of California system, in place of the Regents. (FAC ¶¶ 9, 44.)  Defendants' earlier motions to dismiss Plaintiffs' Complaint are moot in light of the FAC.  See Dkt. Nos. 43-45.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

O'Callaghan was employed by UCSB from 2000 to 2004 and has been continuously employed by UCSB since August 2009. (Id. ¶ 14.) When O'Callaghan began her employment again with UCSB in 2009, she did not join the Union, but did pay agency fees to the Union. (Id. ¶ 15.)

On May 31, 2018, O'Callaghan signed an application joining the Union and authorizing it to deduct union dues from her paycheck after a Union representative came to her workplace. (Id. ¶ 16.) The Union representative did not inform her that a decision was pending in the Supreme Court in Janus v. American Federation of State, County, & Municipal Employees, Council 31, 138 S. Ct. 2448 (2018). (Id.)

On June 27, 2018, the Supreme Court held that agency fees violated "the free speech rights of [non-union] members by compelling them to subsidize private speech on matters of substantial public concern." Id. at 2460.

On July 25, 2018, after learning of the Janus decision, O'Callaghan sent a resignation letter to the Union. (FAC, Dkt. No. 1 ¶ 17.) The same day, she also sent a letter to UCSB requesting that it stop deducting union dues from her paycheck. (Id.) The Union responded that she was free to resign her membership, but that the payroll deductions would continue until she gave notice pursuant to the terms of the Union's collective bargaining agreement with UCSB. (Id. ¶ 18.) The terms provide that she could not provide such notice until March 31, 2022. (Id. ¶ 19.)

On October 16, 2018, Liberty Justice Center sent a letter to UCSB demanding that it immediately stop deducting union dues from O'Callaghan's paycheck. (Id. ¶ 20.) On October 24, 2018, UCSB referred the Liberty Justice Center letter to the Union via e-mail. (Id. ¶ 21.) On November 9, 2018, the Union confirmed to UCSB via e-mail that it should continue to deduct union dues from O'Callaghan's paycheck. (Id. ¶ 22.) On November 29, 2018, UCSB sent a letter to Liberty Justice Center stating that it would continue to deduct union dues from O'Callaghan's paycheck. (Id. ¶ 23.) Defendants continue to deduct the dues of approximately $41.00 per month. (Id. ¶ 24.)

Misraje is an administrative assistant in the Geography Department at the University of California, Los Angeles ("UCLA"), where she has been employed since May 2015. (Id. ¶¶ 8, 25.) On July 27, 2015, Misraje signed an application joining the

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

Union and authorizing it to deduct dues from her paycheck. (Id. ¶ 26.)

On August 8, 2018, Misraje sent a letter to the Union requesting to withdraw her union membership. (Id. ¶ 27.) On August 9, 2018, the Union responded to Misraje via e-mail that she would be dropped as a full member of the Union, but that she could only end the deduction of union dues from her paycheck during a particular time window. (Id. ¶ 28.)

On August 27, 2018, Misraje sent an e-mail to the Union, requesting that it immediately terminate her union membership and stop deducting union dues from her paycheck. (Id. ¶ 29.) She likewise sent an email to UCLA requesting that it stop deducting union dues from her paycheck. (Id.) UCLA responded the same day saying that it could not grant her request because all such requests must come through the Union under California law. (Id. ¶ 30.) The Union repeated its response that Misraje was no longer a Union member but could not end deduction of her union dues at that time. (Id. ¶ 31.) Misraje again made similar requests to both the Union and UCLA and received similar responses between October 11, 2018 and December 7, 2018. (Id. ¶¶ 32-3.) According to the terms of the union application that Misraje signed, notice must be sent to both the Union and UCLA at least sixty days but not more than seventy-five days before the anniversary date of the signed agreement. (Id. ¶ 40.) Napolitano continues to deduct approximately $53.00 per month of Misraje's paychecks for union dues. (Id. ¶ 41.)

Plaintiffs brought suit against Defendants under 42 U.S.C. § 1983 and 28 U.S.C. § 2201(a) seeking declaratory relief, injunctive relief, and damages for dues previously deducted from their paychecks. (Id. ¶ 6.)

The Court denied Plaintiffs' motion for a preliminary injunction (Dkt. No. 26) on June 10, 2019. Order, Dkt. No. 51.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

JS - 6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

(2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### III. DISCUSSION

**A.     Napolitano's Motion to Dismiss**

**1.     FRCP 12(b)(1) Subject Matter Jurisdiction**

Napolitano first argues that Plaintiffs' suit arises out of a dispute with their union over issues within the exclusive jurisdiction of the California Public Employment Relations Board ("PERB") and thus must be dismissed as against her under FRCP 12(b)(1). Dkt. No. 55-1, Mot. at 2-5.

Dismissal is proper when a plaintiff fails to properly plead subject matter jurisdiction in the complaint. Fed. R. Civ. P. 12(b)(1). A "jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the challenge is based solely upon the allegations in the complaint (a "facial attack"), the court generally presumes the allegations in the complaint are true. Id.; Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). If instead the challenge disputes the truth of the allegations that would otherwise invoke federal jurisdiction, the challenger has raised a "factual attack," and the court may review evidence beyond the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

confines of the complaint without assuming the truth of the plaintiff's allegations. Safe Air, 373 F.3d at 1039. The plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

California's Higher Education Employment Relations Act ("HEERA") provides for a system of exclusive representative collective bargaining in which the majority of employees in a bargaining unit may select a union representative to negotiate and administer a single collective bargaining agreement to cover the entire unit. See Cal. Gov. Code §§ 3560 et seq. Napolitano argues that because Plaintiffs' allegations of improper dues and the scope of the Union's representation arise out of unfair practice allegations against the Union under HEERA, this Court does not have jurisdiction over the claims asserted against her. Mot. at 2. PERB is the administrative agency charged with administering the provisions of HEERA. Cal. Gov. Code § 3563. As Napolitano points out, PERB has the power to implement HEERA, and so PERB "has jurisdiction over allegations about improper or excessive fees charged by unions relating to union membership, as well as allegations regarding the scope of union representation." Id. at 4; see Cal. Gov. Code §§ 3560, 3563, 3578.

Napolitano further asserts that the fact that Plaintiffs' case asserts constitutional rights "does not divest [PERB] of its jurisdiction" and that PERB's jurisdiction "may be at issue even if the claims are not alleged as unfair practice charges." Mot. at 4. Napolitano suggests that, "[a]t its essence," Plaintiffs' suit sounds in alleged unfair practice charges against the Union under HEERA. Mot. at 5.

The Court agrees with Plaintiffs that PERB's jurisdiction is not implicated here because their claim is not that the Union or Napolitano are committing an unfair labor practice, but that in following California labor law, Defendants violated their First Amendment rights. Opp'n, Dkt. No. 58 at 2-3. As Plaintiffs put it, their "claim is not that the union has charged dues that would be excessive or unfair under HEERA; Plaintiffs' claim is that being charged dues at all violates the First Amendment." Id. at 3.

Accordingly, the Court declines to dismiss Plaintiffs' suit against Napolitano on the basis that it lacks subject matter jurisdiction.

    **2.**     **Janus' Application to Plaintiffs**

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

Napolitano argues that Plaintiffs' FAC should be dismissed under FRCP 12(b)(6) because <u>Janus</u> does not apply to union members who authorized payroll deductions. <u>Id</u>. at 5.

Plaintiffs argue that the continued deduction of union dues violates their First Amendment rights in light of <u>Janus</u>, which held that States and public-sector unions may no longer extract agency fees from nonconsenting employees. <u>Janus</u>, 138 S. Ct. at 2486. Plaintiffs assert that <u>Janus</u> "establishes a duty not to take money without affirmative consent." Opp'n at 4. But, they argue, they did not waive their First Amendment right not to join or pay a union because Defendants did not inform them they had a right not to join. <u>Id.</u> Further, they argue, "at the time [they] signed their union membership applications, they did not know about their rights not to pay a union" because the <u>Janus</u> decision had not yet come down. <u>Id</u>.

The Court agrees with Napolitano that <u>Janus</u> "does not require state employers to cease deductions for employees who had voluntarily entered into contracts to become dues-paying union members." Mot. at 6. <u>Janus</u> limits its holding to situations in which employees have *not* consented to deductions:

> Neither an agency fee nor any other payment to the union may be deducted from a <u>nonmember's</u> wages, nor may any other attempt be made to collect such a payment, <u>unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights</u>, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

<u>Id.</u> (citations omitted) (emphasis added).

Here, Plaintiffs affirmatively agreed to the terms of union membership, including the terms regarding dues deductions. Thus, they cannot state a claim that continued deductions violate their First Amendment rights. Plaintiffs argue that their consent to dues deductions was not "voluntarily, knowingly, and intelligently" given because neither

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 19-2289 JVS (DFMx)                                Date   September 30, 2019

Title   Cara O'Callaghan, et al. v. Regents of the University of California, et al.

the Union nor Napolitano "informed them they had a right not to join the union." Opp'n at 4. But, as Napolitano points out, nothing in Janus's holding requires unions to cease deductions for individuals who have affirmatively chosen to become union members and accept the terms of a contract that may limit their ability to revoke authorized dues-deductions in exchange for union membership rights, such as voting, merely because they later decide to resign membership. Mot. at 6. See Belgau v. Inslee, No. 18-5620 RJB, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018) ("Plaintiffs' assertions that they didn't knowingly give up their First Amendment rights before Janus rings hollow. Janus says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues.")

Courts have rejected Plaintiffs' reasoning, explaining that union members voluntarily chose to pay dues in exchange for certain benefits, and "the fact that plaintiffs would not have opted to pay union membership fees if Janus had been the law at the time of their decision does not mean their decision was therefore coerced." See, e.g., Seager v. United Teachers Los Angeles, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019) (internal quotations and citations omitted).

Accordingly, the Court GRANTS Napolitano's motion to dismiss Plaintiffs' FAC as against her, with prejudice.

**B.     Becerra's Motion to Dismiss**

   **1.     State Action**

Plaintiffs request an order enjoining Becerra from defending state laws requiring Plaintiffs to wait until a specified window of time to stop the payroll deductions (the "dues maintenance statutes"). See FAC, Prayer for Relief. In response, Becerra argues that "Plaintiffs' constitutional challenges to the dues-maintenance statutes fail as a matter of law because their claimed injuries arise not from the statues, but from their voluntary decisions to join the union and the terms of their union membership agreements." Dkt. No. 54, Mot. at 7.

The state action requirement serves to "avoid[ ] imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." Lugar v.

Case 2:19-cv-02289-JVS-DFM Document 69 Filed 09/30/19 Page 8 of 14 Page ID #:661

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

Edmonson Oil Co., Inc., 457 U.S. 922, 936 (1982). Consistent with this approach, "constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

Courts apply a two-part test to determine whether governmental involvement in private action had sufficient impact to make the government responsible for the alleged harm. "[T]he first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority," and "[t]he second question is whether, under the facts of this case, respondents, who are private parties, may be appropriately characterized as 'state actors.'" Lugar, 457 U.S. at 937.

The Supreme Court has laid out four tests for determining whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 995 (9th Cir. 2013) (internal quotation marks and citations omitted ).

The "joint action" test, which is the one Plaintiffs argue applies here, (Dkt. No. 59, Mot. at 6) "focuses on whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Id. at 996. "Joint action exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party." Id.

Becerra argues that the injuries Plaintiffs allege "arise exclusively from the union's decision to continue to deduct dues from their paychecks," but that this injury "is not fairly attributable to the dues-maintenance statutes, which merely require that public employers direct requests to change payroll deductions to the union, and to rely on information provided by the union regarding whether deductions were properly canceled or changed." Mot. at 8-9. Becerra argues that Plaintiffs "voluntarily authorized the deduction of union dues from their paychecks," and that the state's "role in facilitating the deductions" does not meet the joint action test. Mot. at 11-12.

The Court disagrees. As Plaintiffs argue, "the time window limitations that the Teamsters are enforcing are asserted pursuant to state statutes that expressly grant the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

Teamsters this special privilege." Dkt. No. 59, Opp'n at 5. Here, the Union has "invoked the aid of state officials to take advantage of a state labor statutory scheme to withdraw these dues." Id. at 6. The state enforces California Government Code §§ 3513(i) and 3583, which permit the Union to set a time limitation for when notice must be given pursuant to the terms of the Union's collective bargaining agreement. The Court finds that this qualifies as "joint action," because the state is facilitating the allegedly unconstitutional conduct Plaintiffs complain of "through [the state's] involvement with a private party." Ohno, 723 F.3d at 996.

Accordingly, the Court denies Becerra's motion to dismiss based on its state action argument.

### 2. Exclusive Representation

Becerra argues that Plaintiffs' free association challenge is foreclosed by Minnesota State Bd. for Cmty. Colleges v. Knight, 465 U.S. 271 (1984) ("Knight") and Mentele v. Inslee, 916 F.3d 783 (9th Cir. 2019) ("Mentele"). Mot. at 14-16. Becerra also argues that Plaintiffs misapply Janus. Id. at 16.

Plaintiffs contend that Becerra's reliance on Knight and Mentele is misplaced, and that the logic of Janus supports their argument that California's statutory scheme compels them to petition the government with a viewpoint that is inconsistent with their view. Opp'n at 9-13.

The Supreme Court in Janus stated:

> We readily acknowledge, as Pickering did, that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." . . . It is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 19-2289 JVS (DFMx)   Date  September 30, 2019

Title  Cara O'Callaghan, et al. v. Regents of the University of California, et al.

138 S. Ct. at 2477–78 (citations omitted).  Janus explains that a state interest in "labor peace" does not require *both* that a union be an exclusive representative of all employees *and* the payment of agency fees by nonmembers.  Id. at 2480.  Rather, Janus's statement that "designation of a union as exclusive representative and the imposition of agency fees are not inextricably linked" suggests that a state interest can still justify a union acting as an exclusive representative for members and nonmembers alike.  Id.  See Knight, 465 U.S. at 28 ("Appellees' speech and associational rights, however, have not been infringed by Minnesota's restriction of participation in 'meet and confer' sessions to the faculty's exclusive representative.  The state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative."); Mentele, 916 F.3d at 789 ("Janus's reference to infringement caused by exclusive union representation, even in the context of its broader discussion of Abood and the Court's long history of relying on labor peace to justify certain provisions in collective bargaining agreements, is not an indication that the Court intended to revise the analytical underpinnings of Knight or otherwise reset the longstanding rules governing the permissibility of mandatory exclusive representation.").

Plaintiffs argue Mentele can be distinguished because it considered the rights of only "partial" state employees with limited representation by the union, whereas Plaintiffs are full public employees.  Opp'n at 12-13.  This distinction does not help their claim survive.  Mentele's primary reasoning is based on Knight's analysis of full public employees; its application of Knight is not limited to "partial" state employees.

Because Supreme Court and Ninth Circuit precedent have "specifically acknowledged that exclusive representation is constitutionally permissible," the Court finds that Plaintiffs cannot state a claim that exclusive representation by the Union violates their First Amendment rights.  Mentele, 916 F.3d at 791.

Accordingly, the Court grants Becerra's motion to dismiss.

**C.     The Union's Motion to Dismiss**

    **1.     Good Faith**

JS - 6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

The Union argues that Plaintiffs' claim for retrospective relief for fair share feels collected from O'Callaghan is barred because the Union acted in good faith reliance on state and federal precedent.

Plaintiffs argue that the Union is not entitled to a "good faith" defense to § 1983 liability. Dkt. No. 57, Opp'n at 7-17. Plaintiffs argue that the defense conflicts with the text of the statute, is incompatible with the statutory basis for qualified immunity, and is inconsistent with equitable principles that injured parties should be compensated for their losses. See id.

The Court agrees with the Union. The analysis in Hernandez v. AFSCME California, 386 F. Supp. 3d 1300, 1304 (E.D. Cal. 2019) is directly on point:

> The Ninth Circuit has held that private parties may be entitled to a good-faith defense to a claim under Section 1983 where they "did [their] best follow the law and had no reason to suspect that there would be a constitutional challenge to [their] actions." See Clement v. City of Glendale, 518 F.3d 1090, 1097 (9th Cir. 2008). In the agency fees context, not only did unions have authorization under state statute, but the practice of collecting agency fees in this manner had been upheld for decades as constitutional by the United States Supreme Court. See Abood [v. Detroit Bd. of Educ.], 431 U.S. [209,] 222-23, 97 S.Ct. 1782, 52 L.Ed.2d 261 [ (1977) ]; see also Locke v. Karass, 555 U.S. 207, 213, 129 S.Ct. 798, 172 L.Ed.2d 552 (2009) (describing Abood's rule, as reaffirmed in subsequent cases, as "a general First Amendment principle"). Thus, the union is entitled to the good-faith defense as a matter of law. See Lusnak v. Bank of Am., N.A., 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (observing that affirmative defenses may be raised on a motion to dismiss where they do not implicate disputed issues of fact).
>
> Faced with this good-faith defense, plaintiffs seek to avoid it by characterizing their demand for a refund as an equitable claim for restitution rather than a legal claim for damages. (See SAC ¶ 141.) They argue that defenses like qualified immunity and good faith are categorically inapplicable to claims for equitable relief. See Wood v. Strickland, 420 U.S. 308, 314 n.6, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ("[I]mmunity from damages does not ordinarily

Case 2:19-cv-02289-JVS-DFM   Document 69   Filed 09/30/19   Page 12 of 14   Page ID #:665

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 19-2289 JVS (DFMx)                          Date   September 30, 2019

Title   Cara O'Callaghan, et al. v. Regents of the University of California, et al.

bar equitable relief."). Even if this distinction is well taken, plaintiffs' refund claim fails for two independent reasons.

First, plaintiffs cannot simply plead around defenses by labeling the proposed remedy as equitable rather than legal. Instead, this court must look to "the substance of the remedy sought rather than the label placed on that remedy." Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 661 (9th Cir. 2019) (citations and quotations omitted). It is uncontroverted that plaintiffs' claim seeks payment out of the general assets of the union defendants. And the Supreme Court has stressed that recovering money out of a defendant's general assets, as opposed to a segregated fund, "is a legal remedy, not an equitable one." Montanile v. Bd. of Tr. of Nat. Elevator Indus. Health Benefit Plan, ––– U.S. –––, 136 S. Ct. 651, 658, 193 L. Ed. 2d 556 (2016) (emphasis in original); see also Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212-14, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) (same).

Plaintiffs do not allege that the union defendants intentionally comingled agency fees with general funds to avoid claims for restitution. Further, unions dissipated any agency fees on nontraceable items. See Montanile, 136 S. Ct. at 658 (stating that expenditure on nontraceable items "destroys an equitable lien"). Plaintiffs' theory under Janus depends on the fact that the fees and dues collected were expended for expressive activities with which they disagreed. See Babb v. Cal.Teachers Ass'n, No. 2:18-cv-06793 JLS DFM, 378 F. Supp. 3d 857, 876, 2019 WL 2022222, at *8 (C.D. Cal. May 8, 2019) ("[I]t is not the case that the agency fees remain in a vault, to be returned like a seized automobile."). Accordingly, because plaintiffs' proposed remedy is legal in nature, the union defendants' good faith bars relief.

Second, the court would reach the same conclusion in a suit in equity. "The essence of equity jurisdiction" is that federal courts have the flexibility "to mould each decree to the necessities of the particular case." Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Even in constitutional adjudication, "equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (plurality). Given these considerations, "[i]t is well

Case 2:19-cv-02289-JVS-DFM   Document 69   Filed 09/30/19   Page 13 of 14   Page ID #:666

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 19-2289 JVS (DFMx)                                Date   September 30, 2019

Title   Cara O'Callaghan, et al. v. Regents of the University of California, et al.

established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." Id. at 203, 93 S.Ct. 1463.

The reliance interests here are quite compelling. The union defendants relied on Supreme Court precedent and a state statute that explicitly authorized the challenged practice. See id. at 209, 93 S. Ct. 1463 ("[S]tate officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful."). Unions throughout the country collected billions of dollars under Abood's rule. See Janus, 138 S. Ct. at 2486. Allowing the recoupment of such a large sum of money would have potentially disruptive consequences that could threaten the operations of unions and significantly deplete their treasuries. See Am. Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 182-83, 110 S. Ct. 2323, 110 L. Ed. 2d 148 (1990) (plurality) (recognizing these as cognizable equitable interests).

Moreover, these plaintiffs presumably received some benefits from the fees they paid, through the representation provided by the unions. While the Supreme Court held in Janus that those benefits could not withstand First Amendment scrutiny, the majority did not deny the fact that nonunion members received such benefits. See 138 S. Ct. at 2466-69.  It must also be observed here that "plaintiffs do not propose to give back the benefits that the union's efforts bestowed on them." Gilpin v. AFSCME, 875 F.2d 1310, 1316 (7th Cir. 1989).  Consequently, granting plaintiffs a full refund would stand the equitable remedy on its head.  See id. Based on these observations, it would be neither fair nor workable to entertain plaintiff' claim.

Nevertheless, plaintiffs argue that a defendant is never allowed to enrich itself by keeping property it took in violation of another's constitutional rights. See, e.g., United States v. Windsor, 570 U.S. 744, 775, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) (ordering the United States to refund taxes it collected in reliance on the Defense of Marriage Act); United States v. Lewis, 478 F.2d 835, 836 (5th Cir. 1973) (stating that fines collected under a statute that is subsequently determined to be unconstitutional must be repaid when suit is brought to recover them).  Those cases, however, do not stand for such a sweeping proposition.  Unlike in Windsor and Lewis, the union defendants are private parties who were not responsible for passing the legislation that is now unconstitutional.  Instead, they relied on the type

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-2289 JVS (DFMx) | Date | September 30, 2019 |
| Title | Cara O'Callaghan, et al. v. Regents of the University of California, et al. | | |

of statute the Supreme Court explicitly approved of in Abood.

Id. at 1304-06. This foregoing analysis applies just as forcefully to Plaintiffs' claims for refunds here, which are, in essence, identical.

Accordingly, the Court finds that the Union is entitled to the "good faith" defense, and Plaintiffs' claims against the Union are dismissed.

### 2. Exclusive Representation

The Court's reasoning regarding Knight and Mentele as they relate to Becerra's motion to dismiss is also applicable to the Union's motion.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss.

**IT IS SO ORDERED.**

                                                                                                        : 0

Initials of Preparer    lmb